475 P.2d 258

James T. PORTER, Appellant,

v.

The EMPIRE FIRE AND MARINE INSURANCE COMPANY, a Nebraska corporation, Appellee.

No. 10051–PR.

Supreme Court of Arizona, In Banc.

Oct. 8, 1970.

Lesher & Scruggs, by Robert O. Lesher, Tucson, for appellee.

William T. Healy, Tucson, for appellant.

American Trial Lawyers Assn., Arizona Chapter by William B. Revis, Langerman, Begam & Lewis, Phoenix, for amicus curiae.

McFARLAND, Justice.

There is no dispute as to the simple facts involved on this review. The plaintiff-respondent, James T. Porter (Porter) received injuries in an automobile accident caused solely by the negligence of one Joseph B. Fitch (Fitch). Four other persons, not parties to this action, were injured along with Porter. Fitch carried liability insurance with the Employer's Group in the minimum amounts of $10,000 for each person, $20,000 per occurrence and $5,000 property damage as set forth in the Financial Responsibility Act, § 28–1170, subsec. B(2) A.R.S.[1] The Employer's

---

1. § 28–1170. "Motor vehicle liability policy" defined

   *     *     *     *     *

B. * * *

2. It shall insure the person named therein and any other person as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:

Group responded in the full amount of its policy coverage by virtue of settlement agreements with Porter and the other four injured persons, with Porter receiving $2,500. It is alleged, and not denied for the purposes of appeal, that Porter sustained injuries in the amount of $10,000.

Porter was insured by the defendant-petitioner, the Empire Fire and Marine Insurance Company (Empire) and his policy contained the standard uninsured motorist provision. Prior to accepting Employer's settlement, Porter demanded that Empire pay the difference between his injuries and the proposed settlement—a sum of $7,500—under the uninsured motorist policy, which Empire declined to do. Porter then filed suit in the Superior Court for the County of Pima. Empire answered and filed a Motion to Dismiss the Complaint on the grounds that it failed to state a claim upon which relief could be granted, which Motion was granted by the court. Empire bases its defense on the ground that the tort-feasor, Fitch was covered by a policy of insurance at the time of the accident which conformed to the minimum requirements of the financial responsibility law and therefore was not an uninsured motorist which exempts Empire's uninsured motorist coverage. Empire's policy definition of a noninsured vehicle is as follows:

"INSURING AGREEMENTS. * * *

(c) 'uninsured automobile' means:

(1) an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder; or

(2) a hit-and-run automobile as defined; but the term 'insured automobile' shall not include:

(i) an insured automobile * * *."

On the other hand Porter claims that since an apportionment of insurance proceeds to him made available only $2,500 of his stipulated $10,000 damages that the tort-feasor was actually uninsured as to the difference between the amount available to Porter and the minimum amount of the Financial Responsibility Act. Porter appealed and the Court of Appeals reversed. 12 Ariz.App. 2, 467 P.2d 77.

We granted the Petition for Review because of the inconsistencies between the Court of Appeal's decision in this case and in Harsha v. Fidelity General Insurance Company, 11 Ariz.App. 438, 465 P.2d 377. In Harsha, the Court of Appeals was faced with a situation wherein the plaintiff had received a recovery of $9,500 on a $10,000 policy held by the third-party tort-feasor and was seeking a full recovery of $10,000, in addition thereto, on her own uninsured motorist coverage;[2] whereas here the plaintiff seeks the difference between his actual recovery of $2,500 and the statutory minimum of $10,000. In Harsha the appellant did not advance the alternate argument involved here, that she was entitled to at least the difference of $500.00.

We are aware that this question has plagued the courts for several years and

(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident.
(b) Subject to the limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident.
(c) Five thousand dollars because of injury to or destruction of property of others in any one accident.

2. This question raised in Harsha is discussed in Transportation Insurance Co. v. Wade, 106 Ariz. 269, 475 P.2d 253, decided this date. The text of the statute relating to Uninsured Motorist Coverage, § 20–259.01 A.R.S. is set forth in Bacchus v. Farmers Insurance Group, 106 Ariz. 280, 475 P.2d 264, decided this same date, and in Transportation Insurance Company v. Wade, supra.

has evoked a contrariety of opinions. The "uninsured motorist" has been treated to definitions, principles and rules almost as varied as the fact-patterns presented to the courts of the several states, but without the emergence of a single, consistent line of reasoning which can serve as a guideline in the determination of subsequent, similar cases.

There are several situations where the tort-feasor actually had some form of liability insurance at the time of the accident but was neverthelss considered "uninsured", for the purposes of the uninsured motorist coverage under the injured party's policy. One of the more common occurrences is where the tort-feasor's carrier becomes insolvent after the claim has arisen. Another is where the policy in force does not cover the particular type injury suffered or for some reason the insurer disclaims liability. And, since not all state statutes require the same minimum coverages, cases arise wherein the tort-feasor has insurance available but with policy limits less than the statutory requirements. Of course, there can be found a number of cases holding the contrary—i. e. that the tort-feasor is not an uninsured motorist. Cases in each of these areas have been collected in an Annotation in 26 A.L.R.3d 883. Professor Widiss has listed the various statutory provisions relating to these situations. Widiss, A Guide to Uninsured Motorist Coverage § 3.9 (W. H. Anderson Co.).

In a number of these instances the injured party recovered some damages from the tort-feasor's carrier but nevertheless the courts considered the tort-feasor to be uninsured as to the difference between the recovery and the statutory minimum. This contravenes Empire's argument in its brief that:

> "The Statute requires only that a policy of insurance provide coverage against 'uninsured' motorists, not 'partially insured motorists.' In fact, there is no such thing as a 'partially insured motorist'; one is 'insured' (as that term is defined by law) or one is 'uninsured.'"

In Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, the court held the tort-feasor to be "insured" and permitted the injured party to recover on his own policy even though he had received $5,000 from the tort-feasor's carrier prior to its entry into insolvency receivership. The court stated:

> "The proper construction of this separately paid for insurance coverage clause should not be an exercise in the blind semantics of literal language construction. We do not feel that the Legislature intended to restrict the benefits of uninsured motorist coverage to those cases where the tort-feasor lacks insurance at the very moment of injury. We feel that when an insurer fails to defend a claim or to satisfy a judgment against its insured, whether *voluntarily* or *involuntarily,* it 'denies coverage' in the only meaningful sense of the term. Realistically, an injured person is as unprotected by a tort-feasor insurance carrier who has become insolvent prior to the satisfaction of his claim just as much as is the person injured by a tort-feasor who has no insurance at all. We therefore hold that the insolvency of a tort-feasor's carrier occurring subsequent to the accident, with a consequent refusal or inability of the carrier to defend or pay a judgment or claim resulting therefrom for which the tort-feasor has become liable, constitutes a 'denial of coverage' within the meaning of such provision in the uninsured motorist clause of the insured's policy. The above rule is bottomed upon the fundamental principles that the uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company capable of responding for damages duly adjudicated against its insured." (Emphasis in original)

In Allstate Insurance Company v. Fusco, 101 R.I. 350, 223 A.2d 447, plain-

tiff's decedent was killed through the negligence of a tort-feasor who was insured for $5,000 per person although the statutory minimum in Rhode Island was $10,000. The court permitted the spouse to recover against decedent's uninsured motorist endorsement up to the minimum amount of mandatory insurance—5,000 additional dollars. In construing the policy definition of "uninsured automobile" which is similar to that contained in Empire's policy, the court said:

"We therefore think that, by legislative intendment as set forth in the cited statutes, 'no bodily injury liability insurance applicable at the time of the accident' as the same appears in Allstate's definition of an uninsured automobile must as a matter of public policy be construed to include any differential between liability insurance carried by the tort feasor and the minimum limits mandated by the legislature. Allstate freely admits that it would be liable in the sum of $10,000 if Baumgardner had carried no insurance whatsoever, but argues in effect that liability insurance carried by Baumgardner in an amount less than that mandated by the legislature constitutes some insurance and thus by the terms of its definition, notwithstanding the legislative fiat, is relieved of all obligations to its insured. We cannot agree."

The same anomaly which existed in the Allstate case presents itself here. Empire takes the position, as we previously stated, that the tort-feasor, Fitch, carried the minimum amount of liability insurance so that, at the time of the accident, there was available to Porter insurance proceeds in the amount of $10,000—theoretically that is. These proceeds were also available to the other four victims of Fitch's negligence at the time of the accident. Therefore Empire reasons that Fitch is removed from the category of "uninsured" as regards Porter's uninsured motorist coverage even though his eventual reimbursement amounted to only $2,500 of his total damages of $10,000. This is nothing more than a game of semantics which underlines the difference between theoretical—or paper coverage—available at the time of the accident and the actual coverage upon which the insured may rely. In commenting on similar reasoning defining an "uninsured motor vehicle as one to which there is no bodily injury liability insurance * * * applicable at the time of the accident" a California court reduced the "paper insurance" argument to a logical absurdity as follows:

"The two provisions are in obvious conflict. The first evinces a clear legislative intent that every California motorist who is insured against liability for bodily injury shall himself be assured of payment of 'at least' $10,000 of an award to him for bodily injury caused to him by the actionable fault of another driver. This view of subdivision (a) is strengthened by its provision that the insurer is to be surety, in such minimum amount, for valid claims of the insured against an 'unknown' (i .e hit-run) driver, or against one operating the car at fault without permission (i. e. a thief). The quoted provision of subdivision (b), literally applied, would mean that the insurer of the injured party would have no liability whatever as surety for the financially irresponsible wrongdoer if the latter carried insurance of $1,000, $500, or or even $1, rather than the $10,000/20,000 limits contemplated by the act.

The conflict can be reconciled only by construing the first provision as waiving the minimum limits of suretyship as to a motorist at fault who has some insurance or bond, however small; or by construing the second provision to define as uninsured a vehicle carrying insurance or bond in limits less than the financial responsibility requirements of the Vehicle Code.

The second alternative more nearly approaches the declared legislative intent. Legislative attention was directed to a gap in the financial responsibility law, which, although it provides minimum

coverage requirements, in fact comes into operation only after the first accident caused by an irresponsible motorist. (See Assembly Interim Committee Reports, Vol. 20, No. 6, Vol. 3, Appendix to Journal of the Assembly, Reg.Sess.1959, p. 11, 14). Moreover, the declared legislative and judicial policy of this state is to give monetary protection to those who lawfully using the highways, suffer injury through negligent use of the highways by others (Continental Cas. Co. v. Phoenix Constr. Co., 46 Cal.2d 423, 434, 296 P.2d 801; Interinsurance Exchange of Automobile Club v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 153, 23 Cal.Rptr. 592, 373 P.2d 640).

Thus we have no hesitancy in choosing the second alternative." Taylor v. Preferred Risk Mutual Insurance Company, 225 Cal.App.2d 80, 37 Cal.Rptr. 63.

The same situation obtains here. Although on paper $10,000 was available to Porter, if he received in actuality only $1 he would find that the protection upon which he relied, and for which he paid premiums, disintegrates in the face of a flimsy, unrealistic excuse. As Allstate Insurance Company conceded in the Fusco case, supra, the insured would be in a much better position had the tort-feasor been totally uninsured. Were this so, Porter would have been able to recover the full amount of his damages under his own uninsured motorist coverage rather than the fraction which he received from Fitch's insurance. Therefore, should this court accept Empire's contention that where a motorist carries 10/20/5 thousand dollars liability insurance and there is an accident involving more than two parties which limits the recovery to a pro rata share (in the instant case it was $2,500 for Porter) if such recovery permits the uninsured motorist carrier to escape liability despite the insufficiency of the recovery, then Porter and others in a similar position would be better off if the tort-feasor had carried no insurance. The Uninsured Motorist Law in such instance would not afford the protection which he expected and the Legislature intended.

In another opinion handed down this day, Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264, we referred to a rule employed by many courts in similar cases that "the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance." See e. g. Stephens v. Allied Mutual Insurance Company, supra. In Bacchus we stated that this rule is not entirely correct and the present case is a good example of the shortcomings of a strict application of this principle. Were we to apply it here we would be forced to leave Porter as we found him—grossly uninsured against irresponsible motorists despite his attempt to insure himself against such a contingency and contrary to the intention of the Legislature.

■ The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise, as we previously pointed out, the insured might be better off if the offending motorist had no insurance whatsoever. We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance; *provided* that there be *available to him* the full amount of his damages, up to the minimum amount prescribed by the Financial Responsibility Act, which in this case is $10,000. This is so whether this sum is recoverable under the insured's policy alone or in combination with those funds actually receivable from the tort-feasor's liability coverage.

■ We accordingly hold Porter is entitled to judgment for $7,500, the balance of his admitted damages in the sum of $10,000.

■ The appellant raised two other questions on appeal; whether he is pre-

cluded from recovering because he was unable to obtain appellee's consent to his release and settlement with Employer's and if he has breached a policy condition by failing to arbitrate the matter with Empire. The appellee raised these matters as affirmative defenses in the trial court but has not controverted these issues in its brief on appeal. We treat these defenses as abandoned by Empire and therefore express no opinion thereon.

In view of the foregoing the decision of the Court of Appeals is vacated and the Order and Judgment of the Superior Court is reversed and the matter remanded for further proceedings not inconsistent with this decision.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.