William KEMP et al., Appellants,

v.

FIDELITY & CASUALTY COMPANY OF NEW YORK et al., Appellees.

No. 4665.

Court of Civil Appeals of Texas, Eastland.

Dec. 28, 1973.

Rehearing Denied Jan. 25, 1974.

Lawrence P. Hochberg, Hochberg, Yuill, Bernstein & Skor, Dallas, James B. Kerby, Garland, for appellants.

Timothy E. Kelley, Thompson, Knight, Simmons & Bullion, W. Richard Bernays, Touchstone, Bernays & Johnston, Byron L. Falk, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellees.

McCLOUD, Chief Justice.

This is a case of first impression in Texas. Appellants, William Kemp and wife, Ruby Kemp, Garrett Bell and Clyde Wayne Bell, contend they are entitled to recover from their respective uninsured motorist insurers the difference between their actual recovery from a third-party tort-feasor, who carried the statutory minimum limits of liability insurance, and the $10,000.00 per person limits provided in their respective policies.

All parties filed motions for summary judgment. The motions of appellees, Fidelity and Casualty Company of New York, Fireman's Fund American Insurance Companies, and State Farm Insurance Company, were granted. Appellants, William Kemp and wife, Ruby Kemp, Garrett Bell and Clyde Wayne Bell have appealed. We affirm.

At the time of the accident in question, William Kemp and wife, Ruby Kemp were insured under the uninsured motorist provisions of a policy of insurance issued to William Kemp by appellee, Fidelity and Casualty Company of New York. Garrett Bell was insured under the uninsured motorist provisions of a policy issued to him by appellee, Fireman's Fund American Insurance Companies and Clyde Wayne Bell was insured under the uninsured motorist provisions of a policy issued to him by appellee, State Farm Insurance Company.

Pauline Bell, wife of appellant Garrett Bell, and mother of appellant, Clyde Wayne Bell, was killed and Ruby Kemp, wife of appellant, William Kemp, was seriously injured while riding as passengers in an automobile driven by Lucius Morse which was struck from the rear by an automobile driven by Olin Keith Smith. Although not involved in this appeal, two other passengers in the Morse vehicle were killed and other occupants injured. Olin Keith Smith was insured by a liability insurance policy issued by American States Insurance Companies with limits of $10,000.00 per person and $20,000.00 per accident, as required by the Texas Safety Responsibility Law, Article 6701h, Vernon's Ann.Civ.Stat.

In a severed nonjury case the trial court found that Smith's negligence was a proximate cause of the collision in question. The court awarded substantial damages for the wrongful deaths and personal injuries resulting from the negligence of Smith. Collectively, the damages awarded were in excess of the tort-feasor's liability insurance limit of $20,000.00 per accident. The individual appellants were awarded damages of at least $10,000.00 each. Smith's liability insurance carrier tendered its $20,000.00 policy limits into court. The tendered sum was apportioned by the court among the numerous parties. Each individual appellant received less than $10,000.00.

In the instant suit appellants seek to recover the difference between the sum received from the tort-feasor's liability insurance carrier and the $10,000.00 coverage provided by the uninsured motorist provisions in their respective policies. Appellants contend that since Smith's liability insurance coverage had to be apportioned among several claimants, the tort-feasor was "uninsured" within the meaning and intent of the Texas Uninsured Motorist Statute, Article 5.06-1, Texas Insurance Code, Vernon's Ann.Civ.Stat.

Each of the policies in question contain uninsured motorist provisions as follows:

" . . . To pay all sums which the insured or his legal representative shall be

legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . "

" 'uninsured automobile' includes a trailer of any type and means:

(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile . . . "

Appellants argue that the Texas Uninsured Motorist Statute constitutes an integral part of appellees' policies and since the Statute states that its purpose is to provide, "conscientious and thoughtful" motorists a means whereby they might protect themselves against, financial loss caused by negligent "financially irresponsible motorists," any definition of an "uninsured" motorist placed in a policy by an insurer which would deny its insured the protection afforded by the Statute would create an anomaly and be in derogation of the Statute. Article 5.06–1 provides in part as follows:

"No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in the limits described in the Texas Motor Vehicle Safety-Responsibility Act,

under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

.   .   .   .   .   .

"For the purpose of this coverage, the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured motorist coverage. The Board may also, in such forms, define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured."

In Fidelity & Casualty Company of New York v. Gatlin, 470 S.W.2d 924 (Tex.Civ. App.—Dallas 1971, no writ) the Court observed: "Our law was obviously enacted by our Legislature for the benefit of the innocent victim of a financially irresponsible motorist. It should be liberally construed to fully accomplish that purpose." In *Gatlin* the Court was concerned with "other insurance" clauses contained in a policy and held that such clauses were invalid because they were contrary to Article 5.06–1. See also American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793 (Tex.Sup.1972).

■ We do not think the definitions of "uninsured motorist" contained in the policies under consideration contravene the intent and purposes of Article 5.06–1.

In Continental Insurance Co. v. Wallace, 233 So.2d 195 (Ct. of App.—Florida 1970), the Court had under consideration statutes and insurance policies similar to those involved in the instant case. There the in-

jured party had recovered the policy limits of $10,000.00 from the negligent tort-feasor's liability insurance carrier and $5,211.-00 from the estate of the tort-feasor. The injured party's uninsured motorist coverage contained a $20,000.00 limit for protection against uninsured motorist, and since his damages were at least in the amount of $20,000.00 the insured sought from his insurer the difference between what he actually recovered and his uninsured motorist policy limits. We agree with the Court's statement:

> "Here, the third party tort-feasor had insurance in the amount that was required under Florida law. The third party not only had liability insurance but coverage was not denied by his insurance company as it paid Wallace $10,000 under the coverage and limits of its policy. Clearly, the third party was not an uninsured motorist in this case so the uninsured motorist coverage provided by Continental never came into operation."

See also, McMinn v. New Hampshire Insurance Company, 276 So.2d 682 (Miss. Sup.1973); Detrick v. Aetna Casualty and Surety Co., 158 N.W.2d 99 (Iowa Sup. 1968); Smiley v. Estate of Toney, 44 Ill.2d 127, 254 N.E.2d 440 (1969).

Appellants argue that the tort-feasor Smith was "financially irresponsible". We disagree. The Texas Safety Responsibility Law, Article 6701h, Vernon's Ann.Civ. Stat., defines "Proof of Financial Responsibility" as follows:

> "'Proof of Financial Responsibility'. Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of Ten Thousand Dollars ($10,000) because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of Twenty Thousand Dollars ($20,000) because of

bodily injury to or death of two (2) or more persons in any one accident, and in the amount of Five Thousand Dollars ($5,000) because of injury to or destruction of property of others in any one accident."

Appellants rely upon Porter v. Empire Fire and Marine Insurance Company, 106 Ariz. 274, 475 P.2d 258 (1970), which fully supports their contentions. We choose, however, not to follow the reasoning and rationale of *Porter*. It is true, as observed in *Porter*, the appellants would have been in a better position if the tort-feasor Smith had carried no liability insurance. While this is true in this particular case, we do not feel that this is sufficient reason to enlarge the meaning of words which are clear and unambiguous. The Supreme Court of Iowa in Detrick v. Aetna Casualty and Surety Company, 158 N.W.2d 99 (Iowa Sup.1968) acknowledged such an anomaly but held that such situation did not authorize the court to write into the insurance contract something that was not there.

Smith was not a "financially irresponsible" motorist as referred to in the Uninsured Motorist Statute. He was covered by liability insurance with minimum limits as required by the Texas Safety Responsibility Law. The definitions of uninsured automobile in the respective policies in question are unambiguous and such definitions do not contravene the intent and purpose of the Uninsured Motorist Statute.

When interpreting legislative intent, we are bound by the clear language of the statute. Railroad Commission of Texas v. Miller, 434 S.W.2d 670 (Tex.Sup.1968). As stated in Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66 (1920):

> "Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect

to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

We hold that the word "uninsured" does not mean underinsured in relation to appellants' damages.

We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.