9 P.3d 1049

**Nellie T. TAYLOR, Plaintiff–Appellant,**

v.

**The TRAVELERS INDEMNITY COMPANY OF AMERICA, Defendant-Appellee.**

**No. CV–99–0370–PR.**

Supreme Court of Arizona, En Banc.

Sept. 15, 2000.

Jackson White By: Richard A. White Eric, K. Macdonald, Mesa, for Nellie T. Taylor.

Teilborg Sanders & Parks, P.C. By: John C. Gemmill, David E. Koval, (now with Morrison Hecker, L.L.P.) Jay C. Jacobson, Phoenix, for The Travelers Indemnity Co.

Bell and O'Connor, By David M. Bell, Phoenix, for Amici Curiae State Farm Mutual Automobile Insurance Co. and Nationwide Insurance Co.

Holloway Odegard Sweeney Evans By Sally A. Odegard, Kenneth J. Januszewski, Phoenix, for Amicus Curiae Safeco Insurance Co.

Ely Bettini Ulman Insana & Turley By J. Wayne Turley, Herbert L. Ely, Burton Rosenblatt, Phoenix, for Amicus Curiae Dale Stout.

1. The policy defined an "insured" as:
   1. You or any "family member."
   2. Any other person "occupying" "your covered auto."
   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sus-

## OPINION

FELDMAN, Justice.

¶1 We granted review to determine the validity of a policy provision that eliminates underinsured motorist coverage ("UIM") for an insured injured in his or her own vehicle as a result of the negligence of another person insured under the same policy. We conclude that an insured is covered up to the face amount of the applicable UIM insurance, less any sums recovered under the liability coverage of the same policy.

## FACTS AND PROCEDURAL HISTORY

¶2 Nellie Taylor ("Plaintiff") was riding in the family car driven by her husband, whose negligent driving caused a collision that killed him and injured her and four people in the other vehicle. The Taylors had a $300,000 single-limit liability policy issued by Travelers, with UIM coverage in the same amount. Mr. Taylor was the named insured, and Plaintiff was insured as a family member.[1] Plaintiff and the four occupants of the other vehicle presented claims on the liability coverage, which Travelers settled by apportioning the $300,000 liability limit among the five claimants. Plaintiff received $183,500, far less than her medical bills, let alone her total damages. Having no coverage from any other source, Plaintiff made a UIM claim on her Travelers policy.

¶3 Travelers denied the claim based on an exclusion that provided:

> We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any person:
>
> * * *
>
> Who has received *any* payment for such "bodily injury" under Coverage A [liability]. . . .

tained by a person described in 1. or 2. above.

Insuring Agreement, Part B, Coverage D–1 [UIM] of Endorsement A02041. Travelers stipulated that Plaintiff was a family member of Mr. Taylor.

Insuring Agreement, Part A, Coverage D–1 [UIM] Exclusions of Endorsement A02041 (emphasis added).

¶ 4 Plaintiff then filed a declaratory judgment action. Travelers argued to the trial judge that its denial of the claim was supported by *Preferred Risk Mutual Insurance Co. v. Tank*, 146 Ariz. 33, 703 P.2d 580 (App.1985). In *Tank*, on facts similar to the present case, the court of appeals held that a family member injured by the negligence of another person insured under the same policy, while both were occupying the insured vehicle, is not entitled to UIM coverage because the policy excluded the insured vehicle from its definition of an "underinsured highway vehicle."

¶ 5 The trial judge granted summary judgment to Travelers and Plaintiff appealed. The court of appeals reversed, finding the policy provision that prohibited paying UIM to a person who received payment under the liability coverage was void because it was not permitted by the following provision of the UIM statute:

> "Underinsured motorist coverage" includes *coverage for a person* if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. *To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.*

A.R.S. § 20–259.01(G) (Supp.1999)[2] (emphasis added). The terms "limits of liability" and "liability limits," as used in the statute, mean the amount actually collectible by the injured person because underinsured (UM) and UIM[3] coverage fill the gap between the tortfeasor's liability limits and the amount actually available to the insured after allocation of those limits among several claimants. *See Porter v. Empire Fire & Marine Ins. Co.*, 106 Ariz. 274, 279, 475 P.2d 258, 263 (1970).

¶ 6 The court of appeals limited *Tank* to cases in which the UIM claimant makes a claim on both the host driver's UIM coverage and the UIM coverage of *someone else's* policy, thus concluding the case was inapplicable when the claimant sought recovery only under her policy. It held, therefore, that Plaintiff's UIM claim on her own policy could not be denied on the ground that she had already made a partial recovery under the liability portion of her own policy. *See Taylor v. Travelers Indem. Co.*, 196 Ariz. 47, 50–51, 992 P.2d 1142, 1145–46 (App.1999). The court said that upholding the trial judge's ruling would make Plaintiff's UIM coverage illusory. *Id.* at 49, 992 P.2d at 1144. We granted Travelers' petition for review to examine the court of appeals' holding in *Tank* and to resolve this important issue of first impression. *See* Ariz.R.Civ.App.P. 23. We have jurisdiction pursuant to Arizona Constitution article VI, section 5(3).

## DISCUSSION

¶ 7 Travelers' basic argument in this court is that an insured is not permitted to collect UIM coverage after collecting any portion of liability coverage under the same policy. It reasons, as did the court in *Tank*, that an insured permitted to collect any amount under both coverages would be stacking coverages and would, in effect, transform inexpensive UIM coverage into additional liability limits for which an adequate premium had not been paid. Review of the statutory language, legislative intent, and case law regarding UM/UIM coverage, however, leads us to disagree.

---

2. Throughout this opinion, we use the subsection lettering that appears in the 1999 amendments to A.R.S. § 20–259.01. The relevant text of the 1999 version of the statute is identical to that in effect at the time of Plaintiff's accident.

3. So far as relevant to this case, policy considerations applying to UM coverage and UIM coverage are identical. Consequently, coverage questions for both are generally treated in the same manner. Thus, our analysis throughout this opinion will refer to decisions dealing with UM as well as UIM coverage. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327 n. 6, 788 P.2d 56, 60 n. 6 (1989); *Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 22–23, 770 P.2d 324, 326–27 (1989).

¶ 8 We note at the outset that Arizona has a mandatory offer provision for both UM and UIM insurance requiring insurers to make written offers of each type of insurance. *See* A.R.S. § 20–259.01(A) and (B). Insurers must then make these coverages available at the request of the insured to cover all persons insured under the policy in limits not less than the liability limits for bodily injury or death contained within the same liability policy. *Id.*[4]

## A. The statutory provision

¶ 9 Travelers argues that the statutory permission for insurers to limit stacking coverages applies, thus qualifying or limiting the broad language of subsection (G) and permitting Travelers to insert the offset or exclusion provisions at issue. But the anti-stacking provision of the statute reads:

> Uninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations. Underinsured motorist coverage shall not provide coverage for a claim against an uninsured motorist in addition to any applicable uninsured motorist coverage. If *multiple policies or coverages purchased by one insured on different vehicles* apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident.

A.R.S. § 20–259.01(H) (emphasis added).

¶ 10 Thus, the statute applies only when multiple vehicles are insured by multiple policies or coverages. Plaintiff is not attempting to add the coverage provided for one vehicle to the coverage provided on another. Nor is she attempting to add UIM coverage to the UM limits. *See id.* The statute therefore does not support Travelers' attempt to limit coverage. The applicable subsection provides, in all-inclusive language, that when the "total damages exceed the total applicable liability limits the [UIM] coverage ... is applicable to the difference."

A.R.S. § 20–259.01(G). The broad language does not contain exceptions.

¶ 11 Thus, we have held that UM and UIM statutes have a remedial purpose and must be construed liberally in favor of coverage, with strict and narrow construction given to offsets and exclusions. *See Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985); 9 COUCH ON INSURANCE 3d § 122:7, at 122–16 n. 47 (1997) (citing *Allstate Ins. Co. v. Pesqueria,* 19 Ariz.App. 528, 508 P.2d 1172 (1973)). As this court noted in *Employers Mutual Casualty Co. v. McKeon,* "narrowing [UM] coverage contravenes a long-standing legislative policy to guarantee all insureds protection against uninsured motorists." 159 Ariz. 111, 114, 765 P.2d 513, 516 (1988); *see also Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 193, 731 P.2d 84, 88 (1986).

¶ 12 Our cases have applied these principles from the very inception of UM and UIM coverage plans. When an injured victim was unable to collect the statutory minimum because the liability limits were divided among multiple claimants, we allowed the victim to recover under his own UM coverage to the extent necessary to reach the statutory minimum. *See Porter,* 106 Ariz. at 279, 475 P.2d at 263; *see also* Diane Mihalsky, *Duran v. Hartford Ins. Co.: When is an Insured Underinsured?,* 22 ARIZ. ST. L.J. 493, 512–13 (1990). Under the present regime, the statutory minimum of UIM coverage is whatever amount the insured chooses to buy up to the limits of liability coverage purchased. See A.R.S. § 20–259.01(B), which requires the insurer to offer and, at the insured's request, to provide that amount of coverage. Thus, the Taylors were entitled to and did purchase UIM coverage against the risk that a tortfeasor's liability coverage would not provide available liability coverage sufficient to cover the damage. In this event, the insured should ordinarily recover the difference up to the UIM benefit purchased. *See Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 327, 788 P.2d

---

4. For a history of UM/UIM insurance in Arizona, see: *State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 253–54, 782 P.2d 727, 729–30 (1989); Joel DeCiancio, *Legislative Review S.B. 1445—The Legislature's Attempt to Reverse Judicial Treatment of Uninsured and Underinsured Motorist Coverage in Arizona,* 30 ARIZ. ST. L.J. 469, 472–73 (1998).

56, 60 (1989); *Spain,* 152 Ariz. at 193, 731 P.2d at 88. The holding of our cases can be summarized as follows:

> Where the insured has paid premiums for a particular limit that the [Uninsured Motorist Act] entitles him to purchase, the statute contains no exception permitting an insurer to set a different limit by eliminating or reducing recovery below actual damages simply because another policy fortuitously also provides some coverage.

*Rashid v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 270, 276, 787 P.2d 1066, 1072 (1990).

¶ 13 As a result of the broad, remedial interpretation we have given the statute mandating UM and UIM coverage, we have long held that exceptions to coverage not permitted by the statute are void. We found the "other vehicle"[5] exclusion void for UM and UIM coverage. *See Higgins v. Fireman's Fund Ins. Co.,* 160 Ariz. 20, 23, 770 P.2d 324, 327 (1989); *Calvert,* 144 Ariz. at 297, 697 P.2d at 690. We found intra-policy offset of UM and liability benefits void. *See Spain,* 152 Ariz. at 194, 731 P.2d at 89. We found the "furnished for regular use" UIM exclusion void. *See State Farm Mut. Auto. Ins. Co. v. Duran (Duran II),* 163 Ariz. 1, 4, 785 P.2d 570, 573 (1989). Finally, we found that a UIM excess /escape clause and prorata limit reduction clause violated public policy. *See Brown,* 163 Ariz. at 327–28, 788 P.2d at 60–61.

¶ 14 Subsection (G) of A.R.S. § 20–259.01 explicitly entitles an insured to UIM coverage if the sum of the *limits of all applicable liability policies* is less than the *total damages* resulting from the accident. The total amount of liability coverage available to Plaintiff was less than her total damages. In such a situation, each injured victim is entitled to fill the gap by seeking recovery under her own UIM policy. This is exactly what Plaintiff is doing. As Travelers concedes, Plaintiff could recover on her policy's UIM coverage to fill the gap if she had been injured while driving her own car, riding in someone else's car, or even walking on the sidewalk. The statute contains no exception for injuries occurring when Plaintiff is a passenger in her own car. Because the policy provisions cannot override the statute, Travelers' policy exclusion should be read solely to limit duplication of recovery, as opposed to completely eliminating UIM coverage. *See Rashid,* 163 Ariz. at 275, 787 P.2d at 1071. Under Travelers' exclusion, however, availability of any recovery under the liability coverage eliminates the UIM coverage. Thus, an insured injured by someone covered for liability under the same policy has no UIM coverage even though the liability coverage actually available might be very little. This, as we have seen, is not authorized by the anti-stacking provision of the statute. Travelers argues, however, that the exclusion is valid and does not violate legislative intent when the UIM claim is made on the same policy that provided liability coverage. We disagree.

**B. Legislative intent**

¶ 15 As we have noted and as *Tank* mentioned, the text of the UM/UIM statute does not permit the exclusion in question, nor any of the many others raised over the years. *See supra* Part A and *Tank,* 146 Ariz. at 36, 703 P.2d at 583. The *Tank* court concluded, however, that the legislature intended that an insured injured in her own car by another insured could be denied the UIM coverage she had purchased. We disagree. We have quite clearly found the legislature intended a broad application of UIM coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the available limits of liability. *See Schultz v. Farmers Ins. Group,* 167 Ariz. 148, 150, 805 P.2d 381, 383 (1991) ("We have previously determined that A.R.S. § 20–259.01 is intended to require, when possible, *full* indemnification of insured victims who have accidents with uninsured or underinsured motorists."); *Brown,* 163 Ariz. at 327, 788 P.2d at 60 ("[T]he legislature intended that UIM cover-

---

5. The "other vehicle" exclusion would deny UM and UIM coverage to insureds who suffer injury in a vehicle they own but have elected to insure under a different policy. *See Higgins,* 160 Ariz. at 21, 770 P.2d at 325. It would also deny UIM coverage when the insured is injured while in an owned but uninsured vehicle. *See State Farm Mut. Auto. Ins. Co. v. Lindsey,* 182 Ariz. 329, 331, 897 P.2d 631, 633 (1995).

age provide the insured with a source of recovery for injuries that could not be adequately compensated by the tortfeasor's liability insurance."); *Wilson*, 162 Ariz. at 254–55, 782 P.2d at 730–31 (legislature intended insurers issuing UIM coverage to provide additional coverage after other coverages were exhausted); *Spain*, 152 Ariz. at 193, 731 P.2d 84 ("An injured passenger may recover under both the liability and UM coverage provided by the host driver's policy if damages exceed the limit of one coverage.").

¶ 16 We have reiterated these principles in many cases interpreting the statute in question, and none of our holdings restricts the interpretation to cases in which the insured makes her UIM claim on someone else's policy. To the contrary, our language has been broad: "General liability insurance is separate and distinct from the first party coverage provided by either UM or UIM insurance." *Wilson*, 162 Ariz. at 258, 782 P.2d at 734. UIM coverage provides indemnification when a negligent motorist is inadequately insured. *See Duran II*, 163 Ariz. at 3, 785 P.2d at 572. First party UIM insurance follows and protects the person, not the vehicle. *See Higgins*, 160 Ariz. at 23, 770 P.2d at 327. "A premium has been paid for each of the coverages.... It seems both equitable and desirable to permit recovery under more than one coverage until the claimant is fully indemnified." *Rashid*, 163 Ariz. at 273, 787 P.2d at 1069 (quoting 1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 13.6, Comment, at 403–04 (2d ed.1987)). If the insured purchased coverage against two separate risks and both occurred, he may recover under both coverages to the limit purchased. *See Spain*, 152 Ariz. at 193, 731 P.2d at 88. Intra-policy setoff provisions limiting an insurer's exposure violate the statute: "the insured purchased coverage against separate risks; if more than one of these risks occur, public policy dictates that the insured receive the coverage she has purchased, which would be coverage for *each* risk." Mihalsky, *supra*, 2 ARIZ. ST. L.J. at 522–23. In this case, the Taylors purchased coverage for both liability

6. *See Calvert*, 144 Ariz. at 296, 697 P.2d at 689.

and UIM. Both risks insured against occurred, thus both coverages should apply.

¶ 17 We see nothing in the text or goals of the statute that would support the concept that the legislature had some unexpressed intent to allow insurers to preclude UM or UIM coverage merely because the policy purchaser was injured in her own car by another person insured under the same policy. No doubt this is a frequently encountered risk because we may safely assume that the insured's family members, such as a spouse or children, ordinarily spend a significant amount of time riding in the insured's car. Why would the legislature permit an insurer to exclude such a risk when the only reason for the consumer to buy UM and UIM is to protect against injury to his or her own family and guests as well as to the named insured himself? Travelers cannot provide a good answer, and we can conceive of none. We reject *Tank*'s unsupported assumption of legislative intent as contrary to the obvious goal of the legislature and one that would destroy, to a great extent, the basic purpose of the legislation.

¶ 18 This can be seen even more clearly by a moment's reflection on the pragmatic results of adopting Travelers' position. First, as previously noted, the purpose of UM and UIM coverage is to enable the consumer to protect himself and family members against the possibility that, in any given accident, there will be no or insufficient liability coverage to compensate for the actual damages sustained. The only protection available is UM and UIM. Let us assume an intelligent consumer wished to protect against the risk of family members being injured while riding as passengers in someone else's car, while a pedestrian or bicyclist, or while sitting on a park bench.[6] Why would that consumer not wish to have such coverage apply when the family member is exposed to injury by the negligence of another family member in a place in which he or she is quite likely to be found—riding in the family automobile? Why would a named insured not want to protect his own children against his own negligent driving? There is, of course, no good answer to either question. Why would

the legislature wish to authorize the exclusion of all UIM coverage against such a frequently encountered risk? Again, we can think of no good reason.

¶ 19 One might think that the consumer could provide the necessary protection by buying higher liability limits. But if Travelers is correct, there would be no way under existing law in which an insured could protect his family from this risk. Many policies contain the very common clause described as the household exclusion, which excludes coverage under the liability portion of the policy when a family member is injured by the negligence of another family member driving the insured vehicle. *See* 8 COUCH ON INSURANCE 3d § 114:24; 3 A. WIDISS, *supra* § 33.5. We considered a challenge to the validity of the household exclusion in *Arceneaux v. State Farm Mutual Automobile Insurance Co.,* 113 Ariz. 216, 550 P.2d 87 (1976). We held that the exclusion was invalid up to the minimum limits of liability coverage required by the financial responsibility act because that law did not permit such an exclusion. We further held, however, that the exclusion could be applied to the entire coverage in excess of the minimum limits, thus leaving each family member injured by the negligence of another family member a minimum amount of liability coverage—$15,000 under the present statute. *See id.* at 218, 550 P.2d at 89; *see also* A.R.S. § 28–4009. The rationale of that decision is that all coverage in excess of the minimum limits required by the financial responsibility law was a matter of contract between the insurer and the insured. *See Arceneaux,* 113 Ariz. at 217, 550 P.2d at 88. This rationale, of course, is based on the *Arceneaux* court's idea that the average consumer has a bargaining position when purchasing the standard form of liability coverage and that the consumer can therefore negotiate with the insurer to delete or modify the household exclusion in the company's standard form.

¶ 20 While this fantasy may well have been the subject of judicial and legislative challenge, the issue became moot with the adoption in 1981 of UIM coverage, which allowed the insured to fill the gap when there was insufficient liability coverage. And, unlike liability coverage, the financial responsibility laws do not provide a $15,000 minimum limit for UM and UIM coverage. The UM and UIM statutes do not permit the same conclusion that this court reached in *Arceneaux* because, at the option of the insured, the minimum amount of UM and UIM coverage is equal to the amount of liability coverage the insured purchases. *See* A.R.S. § 20–259.01. Thus, the only manner in which an insured could protect family members against the commonly encountered risk of being injured while riding in the family car, driven by another family member, is through the purchase of UM and UIM coverage and not the purchase of liability coverage. Otherwise, family members injured in the family car are limited to $15,000 in coverage of any type.

¶ 21 While all of this may be clear to those able to read Sanskrit, we must assume, of course, that the legislature certainly was aware of the case law, the types of coverage needed by consumers, and the limited possibilities by which consumers could protect themselves against this commonly encountered risk. Given that assumption, we cannot possibly conclude that the broad words of A.R.S. § 20–259.01(G), requiring UIM to cover the difference between the available liability coverage and the actual damages sustained in the accident, contain some implicit, unarticulated permission for insurers to exclude situations in which an insured or a family member was injured due to the negligent driving of the family car by another insured family member. If the legislature had or has such an intent, it can certainly insert the appropriate words. Until and unless that happens, we do not believe it appropriate to recognize and validate exclusions not mentioned in the statute.

¶ 22 Thus, a moment's reflection about this situation and others that could be hypothesized leads us to the conclusion that A.R.S. § 20–259.01 means what it says: Where there is insufficient liability coverage available to compensate for the actual damages sustained, the named insured or a family member injured in or by the family car and by the negligence of another insured may turn to his or her UIM coverage to

make up the difference between actual damages and the available liability coverage. We will not interline the UM and UIM statutes to permit exclusions that have not been mentioned by the legislature. *C.f.* A.R.S. § 28–4003 and § 28–4009(C)(4)(a–d) (listing exceptions to motor vehicle liability policy requirements of the financial responsibility laws).

## C.  Basic purpose of UIM destroyed

¶ 23 If Travelers' argument were accepted, Plaintiff would be unable to receive the amount of desired UIM coverage to which the law entitled her when the full limits of an insured's liability coverage were not available because of multiple claimants, as in the present case, if the household exclusion discussed above applies,[7] or for some other reason. Family members would always be unable to recover under the UIM coverage the family purchased in such a situation, even though their damages exceeded either or both coverages. This would be true in every case in which the claimant was riding in the family car, thus leading to less protection for the named insured's spouse, children, and other family members than for other passengers who would be covered under the policy's UIM coverage. Such a result would also contravene the legislative goal of allowing consumers to buy UIM coverage to protect themselves and their families.[8] "The whole point of UM and UIM coverage is that other insurance might *not* be available, or if available, might *not* be adequate to fully compensate for resultant bodily injury." *St. Paul Fire & Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 163, 812 P.2d 977, 981 (1991) (citing *Brown*, 163 Ariz. at 328, 788 P.2d at 61) (emphasis added).

---

**7.** We presume the Taylors' policy did not contain a household exclusion, or if it did, for some reason it was not applied. The record does not contain the policy issued by Travelers.

**8.** We do not address the reasonable expectation test of *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 389–90, 682 P.2d 388, 394–95 (1984), because Plaintiff did not raise either her subjective reasonable expectations or the objective and general reasonable expectations of consumers arising from the very nature of the product purchased. *See Wilson*, 162 Ariz. at 256, 782 P.2d at 732.

¶ 24 Thus, the provision on which Travelers relies in the present case to prohibit *all* UIM recovery when there has been *any* recovery from the liability coverage in the same policy undercuts the very purpose for which an insured buys separate UIM coverage—to protect himself and his household when a tortfeasor's liability limits are insufficient to pay all the damage inflicted. Travelers argues, however, that this result is exactly what is permitted by case law.

## D.  Case law

¶ 25 The first of the two cases on which Travelers primarily relies is *Duran v. Hartford Insurance Co. (Duran I)*, 160 Ariz. 223, 772 P.2d 577 (1989). Lisa Duran, a passenger in her grandmother's car, was badly injured in an accident caused by the negligence of her brother, a permissive driver of the car. The named insured was the grandmother, Lisa's brother was an omnibus insured under the policy, and Lisa *collected the full liability limit* prior to making a claim under her grandmother's UIM coverage. We held this constituted an impermissible attempt to stack the UIM limits onto the liability limits because recovery under the UIM portion of the same policy after recovery of the full liability limit would effectively increase the liability coverage purchased by the named insured. *See id.* at 224, 772 P.2d at 578. These facts lead to three distinctions from *Taylor:* 1) both Lisa and her brother were Class II insureds [9] under the grandmother's policy, 2) Lisa collected the full amount of liability coverage under the policy, and 3) Lisa had other UIM coverage available from her parents' policy. The court of appeals in *Duran I* focused on the first distinction, but the better line of reasoning concentrates on

---

**9.** Class I insureds generally are the named insured and others, such as family members, with a direct relationship to the named insured or the vehicle, while Class II insureds generally have a more marginal relationship, such as being a passenger or permissive user of a vehicle for a limited time. The status of the insured is usually treated as relevant, with Class I insureds more likely to have higher reasonable expectations due to their payment of premiums for the insurance in question. *See* 12 COUCH ON INSURANCE 3d § 169:15, at 169–33 (1998).

what the insured recovered under the policy in comparison to what the insured purchased. According to Professor Widiss, if part of the liability insurance has been disbursed to other claimants, there is substantial justification for allowing a recovery of UIM benefits. 3 A. WIDISS, *supra* § 41.8, at 306 (Supp.2000).

The goal of providing indemnification for the injuries sustained by motor vehicle accident victims ... would be well served by employing setoffs so they apply to avoid the duplication of benefits, rather than to reduce liability for the insurer when the tortfeasor's liability insurance is not adequate to provide full indemnification....

\* \* \*

The public interest would be well served by two changes ... *setoffs would be determined on the basis of reducing the insurer's liability only in relation to the amount of damages for which the claimant has actually been compensated.*

\* \* \*

*[UIM] should be made available to purchasers as a coverage which is not restricted by the amount of liability insurance which the purchaser selects.*

*Id.* § 41.7, Comment, at 304–05 (emphasis added). But, Widiss argues, when, as in *Duran I* but not in *Taylor*, the injured person has recovered the full amount of the liability insurance, there is no persuasive reason to allow her also to collect under the UIM coverage if an offset provision is clear and unambiguous. *See id.* § 41.8, at 305–06.

¶ 26 Therefore, *Duran I* is easily distinguished from *Taylor*. The full amount of liability insurance purchased was paid out to Lisa Duran, and under Widiss' argument, collection of UIM benefits would provide the insured with more than she purchased.[10] But, just as the insured should not receive more than he or she purchased, neither should he or she receive less. That is the

problem in the other case on which Travelers relies. In *Tank*, Harold Presley's wife and daughter were killed, two of his wife's children from a previous marriage were injured, and the driver of another vehicle was killed—all due to Harold's negligence. All except the other driver were insured under the Presley policy. After the insurer allocated the full amount of liability coverage between the claimants, the claim for UIM coverage was denied because the policy excluded the insured vehicle from the definition of "an underinsured highway vehicle." The court of appeals upheld the exclusion, stating that the legislative purpose behind UIM coverage was "compensation for injuries caused by *other motorists* who are underinsured." *Tank*, 146 Ariz. at 36, 703 P.2d at 583 (emphasis added). This statement of limited legislative purpose was unsupported by anything in the text of the statute, its legislative history, or the basic goals of UIM coverage. In the present case, the court of appeals distinguished *Tank* on the basis that the UIM claimants there could present a claim on their own policy and could then be fully compensated. *See Taylor*, 196 Ariz. at 49, 992 P.2d at 1144. More important, however, *Tank* simply failed to take into account that due to the payment from liability coverage made to the other driver, the Presley family passengers would not have received the full protection that had been purchased unless they were permitted to claim under the Presley UIM coverage. *Tank* also does not consider that purchasers of UIM coverage are entitled to protect themselves and their families against the very risk presented by this case—the gap when insufficient liability coverage is available from their own policy. *See Taylor*, 196 Ariz. at 50, 992 P.2d at 1145 (citing cases).

¶ 27 There was no petition for review of the court of appeals' opinion in *Tank*. The present case is thus a case of first impression for this court. Though *Tank* was decided fifteen years ago and the legislature

---

10. We have not been asked to re-examine *Duran I. But see* Mihalsky, *supra*, 22 ARIZ. ST. L J. at 522–23. We therefore do not address the question of whether the reasoning of *Duran I*, which allowed an *offset* against UIM for liability coverage paid, can co-exist with *Duran II*, which precludes ex-

clusions not specifically allowed by statute. The dissent argues that under our reading of A.R.S. § 20–259.01, *Duran* was wrong and should be overruled. *See* dissent at ¶ 40. We do not address that question because neither party asked us to do so.

has not acted, the legislature's silence cannot be taken as approval. *See Southwestern Paint & Varnish Co. v. Arizona Dep't of Environmental Quality*, 194 Ariz. 22, 25, 976 P.2d 872, 875 (1999) (principle of legislative acquiescence only applies if supreme court, as opposed to intermediate appellate court, construes statute, and then only if the legislature considered and declined to reject the relevant judicial interpretation). For the reasons mentioned, we believe *Tank* was incorrectly decided and hereby disapprove it.

### E. Stacking

¶ 28 Travelers argues that, irrespective of statutory authorization, the policy exclusion in question is designed to accomplish the permissible object of forbidding stacking of coverage. We do not agree that the present case involves a true stacking situation.

> The right to stack concurrent coverages for a single loss addressed here must also be distinguished from the right of an insured to recover under more than one type of coverage for a given loss. Although occasionally described as 'stacking' the latter issue is more a question of the risks that fall within a particular type of coverage, and *insureds generally are allowed to receive recovery under more than one coverage as long as they do not receive more than the amount of their loss, even when the policy contains an anti-stacking clause.*
>
> * * *
>
> For the most part, the right to recover under two different coverage types for the same type of injury is left to the contract language regarding set-offs, and the like, of which there are many.

12 COUCH ON INSURANCE 3d § 169:6, at 169–18 to 169–19 (1998) (emphasis added). To this we must add, of course, the corollary that such policy language must conform to statutory goals and language. Here, Plaintiff is trying to recover under two different coverage types with the appropriate offset to avoid duplication of benefits.[11] Stacking is "the practice by which insureds may seek indemnification from the *same coverage* under *two or more policies.*" *Lindsey*, 182 Ariz. at 331, 897 P.2d at 633 (emphasis added). The *Lindsey* court held that insurers needed to prohibit coverage stacking in clear and unambiguous terms; for multiple vehicles, they might do so by issuing one policy on all vehicles. *Id.* at 332, 897 P.2d at 634. The Arizona statute also expressly allows the preclusion of stacking UIM coverages from separate *policies* purchased by the insured from the same insurer. A.R.S. § 20–259.01(H).

¶ 29 If Plaintiff were trying to recover $600,000 under the combined liability and UIM coverage of the policy, she would be trying to stack limits. *Cf. Duran I,* 160 Ariz. at 224, 772 P.2d at 578 (the insured was paid the full liability limits and was then claiming against the UIM coverage despite an offset provision similar to that set out in n. 11 *ante*). But "coverage terms should be structured so as to assure an insured's indemnification up to the coverage limits selected and paid for by the purchaser whenever compensation is not actually available from an insured tortfeasor." 3 A. WIDISS, *supra* § 35.22, at 198. The Taylors paid premiums to obtain UIM coverage up to $300,000 if the insured tortfeasor did not have sufficient coverage available. Due to multiple claimants, the insured tortfeasor did not have available coverage sufficient to indemnify Plaintiff up to this limit. The Travelers UIM coverage should thus cover the difference between the lesser of her actual damages or the $300,000 policy limit and the amount received thus far from the insured tortfeasor, Mr. Taylor.

### F. Prospective versus retrospective application

¶ 30 Travelers argues that the court of appeals' opinion breaks with the

---

**11.** The Travelers policy contains the following provision:

> Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
> 1) Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A [Liability] of this policy. . . .

Insuring Agreement, Part C, Coverage D–1 [UIM] Limit of Liability of Endorsement A02041. Plaintiff has not questioned the validity of this clause.

clear and reliable precedent of *Duran I* and *Tank* with no associated changes in either the law or evidence regarding legislative intent. Thus, if it is affirmed, Travelers says the holding should apply prospectively only. "Unless otherwise specified, Arizona appellate opinions in civil cases operate both retroactively and prospectively." *Law v. Superior Court,* 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988). We occasionally allow a decision to have only prospective application, but the matter "is a policy question within this court's discretion." *Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990). The considerations this court uses to decide whether an opinion will be given prospective application only are:

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

3. Retroactive application would produce substantially inequitable results.

*Lowing v. Allstate Ins. Co. Inc.,* 176 Ariz. 101, 108, 859 P.2d 724, 731 (1993). These factors have been termed the reliance, purpose, and inequity factors. *Fain,* 163 Ariz. at 596, 790 P.2d at 251. The decision of whether an opinion will only be applied prospectively involves a balancing of these three factors. *Law,* 157 Ariz. at 161, 755 P.2d at 1149.

¶ 31 Not one of these factors points to prospective-only application of this opinion. This is a case of first impression in our court; thus we have not overruled clear and reliable precedent. The result has been foreshadowed by previous interpretations of insurance coverage limitations discussed above, and retroactive application does not adversely affect the purpose of the new rule. Substantially inequitable results would occur if we did not apply the rule to all who find themselves in Plaintiff's situation. Insureds would belatedly discover that they are not covered by statutory UIM coverage to the limits they specified and for which they paid a premium if they are a passenger in a vehicle driven by another insured member of their household. Travelers has made no showing that it justifiably relied on *Tank* in setting rates. Consumers are entitled, on the other hand, to get what they buy. The equities here are on the consumers' side. Thus, the usual rule between retroactive and prospective application applies.

## CONCLUSION

¶ 32 Assuming her total damages are equal to or exceed $300,000, Plaintiff is entitled to additional UIM coverage to fill the gap between the amount she received from all applicable liability coverages and her UIM coverage limits. The gap exists when the full amount of liability coverage is unavailable to a UIM claimant who is also an insured under the same policy. In that event, UIM coverage may be used to cover the difference between the liability payment available to the insured and the amount of the insured's damages or the limits of UIM, whichever is less. Under the facts of this case and the principle established in *Duran I,* Plaintiff is therefore entitled to $300,000 less $183,500 or $116,500 of UIM coverage from Travelers.

¶ 33 The court of appeals' opinion is approved except as modified by this opinion, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, and RUTH V. McGREGOR, Justice.

MARTONE, Justice, dissenting.

¶ 34 The fundamental issue here is whether the tortfeasors against whom underinsured motorist coverage is purchased include one's spouse, with whom the claimant either made decisions about limits, or had an opportunity to do so. It is a difficult question, because, for the most part, just as policyholders buy liability insurance to protect their assets from the claims of third parties, they buy underinsured motorist coverage to protect themselves against injuries caused by underinsured third parties. I do not believe most policyholders consider the possibility that the third party might be the person with

whom they either made decisions about limits, or had the opportunity to do so. We buy underinsured motorist coverage to protect ourselves against the poor choices other people make when they buy liability insurance in limits too low to cover our losses. It seems unlikely that anyone would expect that the claimant would have any role in the selection of limits and at the same time be a UIM claimant.

¶ 35 So when the majority asks "[w]hy would the legislature permit an insurer to exclude such a risk when the only reason for the consumer to buy UM and UIM is to protect against injury to his or her own family and guests as well as to the named insured himself?", *ante*, at ¶ 17, the answer is likely to be that the plaintiff is, at the very least, a person who acquiesced in the limits chosen. Ordinarily, insurance does not cover that which is in the control of the insured.

¶ 36 On the other hand, suppose the claimant were not the wife of the named insured but instead the child of the named insured, a person who could not possibly have participated in or acquiesced in decisions about limits. The case in favor of coverage becomes much stronger, and yet under Travelers' approach there would still be no coverage. The majority properly notes this gap in coverage. A policyholder could buy reasonable limits for liability, uninsured motorist, and underinsured motorist, and yet family members may be left out in the cold in the event of catastrophic loss.

¶ 37 The majority says that this difficult issue is resolved by reference to A.R.S. § 20–259.01(G). But that subsection merely defines underinsured motorist coverage. It does not purport to define the extent of that coverage. These are words of description, not applicability. On the other hand, our opinion in *Duran v. Hartford Insurance Co.,* 160 Ariz. 223, 772 P.2d 577 (1989), is directly on point. In *Duran,* the insurance company paid the claimant the full limit of the grandmother's liability coverage. Here, Travelers paid the full limit of the insured's liability policy. In both *Duran* and in the case be-

fore us, the injuries exceeded those limits. In *Duran,* we held the claimant had no claim for underinsured motorist coverage "because 'when an allegation of being 'underinsured' is predicated on the amount of liability insurance in the same policy that provides the [UIM] insurance under which the claim is made ... the underinsured coverage *may* not be 'stacked' so as to in effect increase the liability coverage purchased by the named insured.'" 160 Ariz. at 224, 772 P.2d at 578.

¶ 38 So how does the majority avoid this result here? It does so because Taylor had to share in the liability limits with other claimants. It allows Taylor to recover UIM but reduces that coverage by any amount received on the liability portion of the policy. It does not allow Taylor to recover her full damages. But this is inconsistent with the idea that drives the decision in the first place. The majority says that coverage is required under A.R.S. § 20–259.01(G) whenever the total damages exceed the total applicable liability limits and there are no exceptions. *Ante,* at ¶ 10. Well, Taylor's damages exceed the total applicable liability limits and yet she is not allowed to recover those damages under the UIM policy. She is not treated as other legitimate liability and UIM claimants are treated.

¶ 39 In its attempt to distinguish this case from *Duran,* the majority says "[t]he full amount of liability insurance purchased was paid out to Lisa Duran." *Ante,* at ¶ 26. But the full amount of liability insurance purchased was paid out in this case too. So the majority states that it is not enough for the carrier to pay the full liability limits—those limits must all be paid to the claimant. If there are no other claimants, and the full liability limits are paid to the claimant, there is no underinsured motorist coverage, even though the claimant's injuries exceed the liability limits. On the other hand, if there are multiple claimants, and the claimant must share in the full liability limits with others, then there is underinsured motorist coverage but it is reduced by any payments made under the liability portion of the policy.[1]

1. In this case, the UIM limit is the same as the liability limit. But for this, the outcome might have been wholly inconsistent with the majority's

attempt to distinguish *Duran.* For example, the Taylors might have opted to purchase less than the maximum UIM coverage offered. Had they

¶ 40 I believe there are two logical ways to go with this case. If we adhere strictly to *Duran*, then Taylor loses. She cannot recover on both the liability and UIM portions of her policy. But if we think that *Duran* is wrongly decided, then we should not try to distinguish it in ways that do not matter, but simply overrule it. To do that, however, we would have to say that A.R.S. § 20–259.01(G) requires us to do so. And if it does require that result, there is no principled way to reduce the claimant's recovery for uncompensated damages on the UIM coverage by payments under the liability coverage. Under § 20–259.01(G), she is entitled to whatever amount is available under the liability coverage as well as the full extent of the UIM policy to cover her actual damages. In short, if the claimant's status as a policyholder is insufficient to deprive her of underinsured motorist coverage at all, then why would her status as a liability claimant limit her rights as a UIM claimant?

¶ 41 If I shared the majority's view that A.R.S. § 20–259.01(G) rendered the policy exclusion invalid, I would allow Taylor to recover against the UIM coverage that part of her total loss that was not satisfied by the liability payment. Because, however, I cannot bring myself to hold that A.R.S. § 20–259.01(G) does any more than define UIM coverage, I conclude that Travelers' policy exclusion is not in conflict with the statute. I respectfully dissent.

purchased UIM coverage in any amount less than $183,500 (the amount she recovered under the liability coverage), having shared the liability coverage with other claimants or not, Taylor would have been precluded from any UIM recovery because, according to the majority, "an insured is covered up to the face amount of the applicable UIM insurance, less any sums recovered under the liability coverage of the same policy." *Ante,* at ¶ 1.