SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JEAN CUNDIFF, | ) Arizona Supreme Court |
| | ) No. CV-07-0057-PR |
| Plaintiff/Appellant/Cross- | ) |
| Appellee, | ) Court of Appeals |
| | ) Division Two |
| v. | ) No. 2 CA-CV 05-0209 |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) Pima County |
| INSURANCE COMPANY, | ) Superior Court |
| | ) No. C-20024600 |
| Defendant/Appellee/Cross- | ) |
| Appellant. | ) |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Pima County
The Honorable Deborah Bernini, Judge

**REVERSED; REMANDED**
_____

Opinion of the Court of Appeals, Division Two
213 Ariz. 541, 145 P.3d 638 (App. 2006)

**VACATED**
_____


LAW OFFICE OF BRUCE A. BURKE, P.C.                        Tucson
     By   Bruce A. Burke

And

ELLIOT GLICKSMAN                                          Tucson
     By   Elliot A. Glicksman

And

LAW OFFICES OF JOHN L. TULLY, P.C.                        Tucson
     By   John L. Tully
Attorneys for Jean Cundiff

BRYAN CAVE, L.L.P.                                                    Phoenix
     By   Lawrence G. Scarborough
          J. Alex Grimsley
Attorneys for State Farm Mutual Automobile Insurance Company

HARALSON MILLER PITT FELDMAN & McANALLY, P.L.C.          Tucson
     By   Stanley G. Feldman
Attorney for Amicus Curiae United Policyholders

LAW OFFICES OF CHARLES M. BREWER, LTD.                      Phoenix
     By   David L. Abney
Attorney for Amicus Curiae Arizona Trial Lawyers Association
_____

**M c G R E G O R**, Chief Justice

¶1     We granted review to decide whether Arizona's Uninsured/Underinsured Motorist Act (UMA), Ariz. Rev. Stat. (A.R.S.) § 20-259.01 (2002 & Supp. 2007), permits an insurer to reduce Underinsured Motorist (UIM) coverage by the amount of workers' compensation benefits an insured receives. *See* A.R.S. § 20-259.01.G (defining UIM coverage).  For the reasons that follow, we hold that the UMA's definition of UIM coverage precludes an insurer from reducing such coverage based on the insured's receipt of workers' compensation benefits.

**I.**

¶2     In 1997, a vehicle struck Pima County Deputy Sheriff Jean Cundiff's patrol car during the course of her employment.  The State Compensation Fund provided Deputy Cundiff workers' compensation benefits of $18,695.48 for medical expenses and $11,109.35 for lost wages due to disability.  Cundiff later

2

received a medical retirement, caused in part by this accident and in part by two previous work-related accidents, with monthly benefits of $482.95.

¶3      Cundiff sued the at-fault driver of the other vehicle and settled for $15,000, the limit of the driver's liability coverage. Cundiff then made an UIM claim under her personal motor vehicle liability insurance policy, issued by State Farm, which provided $25,000 in UIM coverage. The parties submitted their dispute to an arbitrator, who ultimately determined that Cundiff's damages totaled $40,000. Neither party appealed the arbitration award.

¶4      Cundiff's policy included the following offset provision: "Any amount payable under [UIM] coverage shall be reduced by any amount paid or payable to or for the *insured* under any worker[s'] compensation, disability benefits, or similar law. This does not reduce the limits of liability required by law for this coverage." Applying this provision, State Farm asserted that Cundiff's workers' compensation benefits reduced the UIM coverage available through the policy. State Farm agreed to pay Cundiff $10,000, relying on its offset provision to reach this amount.

¶5      Cundiff then filed suit against State Farm seeking a declaratory judgment that the workers' compensation offset provision was unenforceable per se or, alternatively, that State

3

Farm's application of offsets for workers' compensation benefits not in evidence at the arbitration hearing deprived her of her right to be made whole. Addressing the former argument, the superior court found the offset provision enforceable so long as it did not interfere with Cundiff's right to receive full compensation for her loss. The court then awarded Cundiff damages on the latter theory, finding no duplication of benefits.

¶6    Cundiff appealed the trial court's ruling that the offset provision was not unenforceable per se, arguing that the offset provision violates the UMA and the common law collateral source rule. State Farm countered that controlling case law allowed the offset provision to prevent double recovery and cross-appealed from the damages award. The court of appeals, relying primarily on *Terry v. Auto-Owners Insurance Co.*, 184 Ariz. 246, 908 P.2d 60 (App. 1995), held in favor of State Farm, concluding that the offset provision reducing UIM coverage by the amount of workers' compensation received was valid. The court of appeals also held that the collateral source rule does not apply to UIM cases.[1]

¶7    We granted Cundiff's petition for review because it raises an issue of statewide importance involving the proper

---

[1]    Given our decision in this case, we need not address the parties' collateral source rule arguments.

application of A.R.S. § 20-259.01.G.  We exercise jurisdiction pursuant to Article 6, Section 5.3, of the Arizona Constitution and Rule 23(c) of the Arizona Rules of Civil Appellate Procedure (ARCAP).

**II.**

**A.**

¶8     This case requires us to construe the language of the UMA.[2]  When the language of a statute is clear and unambiguous, a court should not look beyond the language, but rather "simply 'apply it without using other means of construction,' assuming that the legislature has said what it means." *Hughes v. Jorgenson*, 203 Ariz. 71, 73 ¶ 11, 50 P.3d 821, 823 (2002) (quoting *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 330 ¶ 12, 26 P.3d 510, 513 (2001)).

¶9     In this case, the language of the UMA is clear.  The statute first requires insurers to offer coverage for underinsured motorists, A.R.S. § 20-259.01.B, and then defines the scope of UIM coverage:

> "Underinsured motorist coverage" includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of

---

[2]     The Court reviews issues of statutory construction de novo. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 547 ¶ 8, 105 P.3d 1163, 1166 (2005) (citing *Canon School Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994)).

the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.

A.R.S. § 20-259.01.G. Subsection G defines UIM coverage as the difference between one's total damages for bodily injury or death and the total limits of applicable liability insurance policies. Thus, the plain and unambiguous statutory text defines the "total applicable liability limits" as the only amount deducted from the insured's total damages when calculating UIM coverage, with the insured's policy limits constituting the maximum possible UIM coverage. Over the years, this Court has considered and rejected numerous attempts to limit UIM coverage in ways not expressly permitted by the statute.[3] Recently we noted that because the statute's "broad language does not contain exceptions," *Taylor*, 198 Ariz. at 314 ¶ 10, 9 P.3d at 1053, "exceptions to coverage not permitted by the statute are void." *Id.* at 315 ¶ 13, 9 P.3d at 1054.

---

[3] *See, e.g.*, *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 314 ¶¶ 10-11, 9 P.3d 1049, 1053 (2000) (funds already paid under policy's liability coverage); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331, 897 P.2d 631, 633 (1995) ("other vehicle" exclusion); *State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 4, 785 P.2d 570, 573 (1989) ("furnished for regular use" exclusion); *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 329, 788 P.2d 56, 62 (1989) ("excess/escape" and "prorata limit reduction" clauses); *Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 23, 770 P.2d 324, 327 (1989) ("other vehicle" exclusion).

¶10  The parties agree that Cundiff's "total damages" equaled $40,000 and that the tortfeasor's liability limits equaled $15,000.  Cundiff's UIM policy contained a $25,000 limit, an amount equal to the $25,000 difference between the tortfeasor's liability limits and her damages.  State Farm, however, wishes to subtract workers' compensation benefits as well as the tortfeasor's liability coverage from Cundiff's total damages to calculate Cundiff's UIM coverage.  Because the limit of the total applicable liability insurance is the only factor the statute permits to be used in calculating UIM coverage, workers' compensation benefits can be subtracted only if those benefits constitute part of the applicable "liability insurance" under the UMA.

¶11  The statutory definitions and purpose of our workers' compensation scheme make clear that workers' compensation does not constitute "liability insurance."  State Farm asserts that because workers' compensation and liability insurance both fall under the statutory definition of "casualty insurance," *see* A.R.S. § 20-252.1-.2 (2002), workers' compensation must be liability insurance.  This argument fails.  Although both workers' compensation and liability insurance are types of casualty insurance, they are separate and distinct.  Liability insurance is "insurance against legal liability," while workers' compensation is "insurance of the obligations accepted by,

7

imposed upon or assumed by employers under law." *Id.* Unlike liability insurance, workers' compensation does not provide coverage based on fault. Indeed, the workers' compensation system is specifically designed to remove any concept of fault from the question of compensability of an injury. *See Stoecker v. Brush Wellman, Inc.*, 194 Ariz. 448, 451 ¶ 11, 984 P.2d 534, 537 (1999) ("The underlying principle of the compensation system is a trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for accidental injuries sustained in work-related accidents."). Because workers' compensation is not liability insurance, the statute does not permit consideration of workers' compensation benefits in determining the amount of UIM coverage available to an insured.

¶12    Our previous decision in *Taylor* supports our conclusion that UIM insurers cannot deduct workers' compensation benefits from UIM coverage. *See* 198 Ariz. 310, 9 P.3d 1049. In *Taylor*, a husband negligently caused an auto accident, injuring his wife (Taylor). *Id.* at 312 ¶ 2, 9 P.3d at 1051. Because the husband's insurance policy named Taylor as an insured family member, the policy covered both spouses. *Id.* The insurer provided coverage to Taylor under the husband's policy, which was insufficient to cover even her medical bills. *Id.* The insurance company then denied Taylor's UIM claim, citing to the

8

insurance policy, which excluded any UIM coverage for an insured who recovered any payment under another provision in the same policy. *Id.* at 312-13 ¶ 3, 9 P.3d at 1051-52.

¶13    In determining Taylor's UIM coverage, this Court noted that UIM statutes "have a remedial purpose and must be construed liberally in favor of coverage, with strict and narrow construction given to offsets and exclusions." *Id.* at 314 ¶ 11, 9 P.3d at 1053 (citing *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985)). We held that the UMA entitled Taylor to UIM coverage and refused to allow an offset not included in the statute. *Id.* at 317-18 ¶ 22, 9 P.3d at 1056-57. "We will not interline the [Uninsured Motorist (UM)] and UIM statutes to permit exclusions that have not been mentioned by the legislature." *Id.* at 318 ¶ 22, 9 P.3d at 1057.

¶14    Rather than relying on *Taylor*, which involved UIM, State Farm relies primarily on two decisions involving UM coverage, *Schultz v. Farmers Ins. Group of Cos.*, 167 Ariz. 148, 153, 805 P.2d 381, 386 (1991) (upholding a non-duplication endorsement in an UM case, reasoning that "a non-duplication endorsement is enforceable if it does not interfere with the insured's right to full recovery for her loss"), and *Terry*, 184 Ariz. at 249-50, 908 P.2d at 63-64 (upholding a workers' compensation offset provision in an UM policy so long as it does not prevent full recovery of damages). Distinct statutory provisions, however,

define UM and UIM coverage. *Compare* A.R.S. § 20-259.01.E, *with* § 20-259.01.G. The statutory provision defining UM coverage expressly provides that such coverage is "subject to the terms and conditions of that coverage," A.R.S. § 20-259.01.E, while the provision defining UIM coverage does not provide a similar limitation, *see* A.R.S. § 20-259.01.G. *See also* A.R.S. § 20-259.01.H ("Uninsured and underinsured motorist coverages are separate and distinct . . . ."). Thus, for purposes of our analysis of the UIM statute, the reasoning of *Taylor*, rather than that of *Schultz* or *Terry*, applies.

**B.**

¶15    State Farm argues that, despite the express language of the statute, the legislature could not have intended that some injured parties would receive a "double recovery" while others would not. Specifically, State Farm urges this Court to allow the workers' compensation offset because Cundiff will otherwise receive "double recovery." This argument focuses on the fact that when the State Compensation Fund distributes workers' compensation benefits, the Fund acquires a lien on "the amount actually collectible" by the injured employee from the tortfeasor. A.R.S. § 23-1023.D (Supp. 2007). The lien, however, does not extend to amounts collectible from an UIM insurer. In effect, State Farm contends, this scheme creates potentially disparate treatment between an insured injured by a

10

tortfeasor with full liability coverage and an insured injured by a tortfeasor with insufficient liability coverage.

¶16     State Farm's policy argument does not persuade us.  As we stated in *Rashid v. State Farm Mutual Automobile Insurance Co.*,

> [o]ur inquiry in this case should not be circumscribed by the attempt to eliminate disparate treatment resulting from the fortuitous circumstances that vary from case to case.  Our inquiry, rather, is directed to the question of what the statutes require to be included in all policies and whether those statutes provide insurance carriers with latitude to insert exclusions, offsets, or escape provisions.

163 Ariz. 270, 273 n.3, 787 P.2d 1066, 1069 n.3 (1990).  The language of § 20-259.01.G does not permit insurance carriers to insert the offset language at issue here.  We cannot disregard the unambiguous language of the statute.  State Farm should direct its policy arguments to the legislature rather than to the courts.

### III.

¶17     State Farm also argues that if we conclude that workers' compensation is not relevant to a determination of UIM coverage under the UMA, we should apply our decision prospectively only.  We hold that this decision will apply both prospectively and retroactively.  *See Taylor*, 198 Ariz. at 320-21 ¶¶ 30-31, 9 P.3d at 1059-60.

¶18     "'Unless otherwise specified, Arizona appellate opinions in civil cases operate both retroactively and prospectively.'"

11

*Id.* at 321 ¶ 30, 9 P.3d at 1060 (quoting *Law v. Superior Court*, 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988)). To determine whether an opinion should apply only prospectively, we balance three factors: (1) whether we establish "a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed," (2) whether "[r]etroactive application would adversely affect the purpose behind the new rule," and (3) whether "[r]etroactive application would produce substantially inequitable results." *Id.* (citing *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 108, 859 P.2d 724, 731 (1993)). The first two factors do not favor prospective-only application here, because we are not overturning "clear and reliable precedent" or creating a new rule. *See id.* Rather, our decision follows this Court's previous decisions involving UIM coverage. *See, e.g.*, *id.* at 315 ¶ 13, 9 P.3d at 1054. The third factor also does not favor prospective-only application: State Farm has provided no reason for us to conclude that retroactive application will produce inequitable results. Indeed, limiting this decision to prospective application would produce inequitable results, because such a limitation could deprive insureds of UIM coverage to which they are entitled. Accordingly, none of these factors require us to limit our opinion to prospective application.

**IV.**

12

¶19     Cundiff and State Farm requested attorneys' fees under A.R.S. § 12-341.01 (2003).  Pursuant to ARCAP 21, we grant Cundiff's request for attorneys' fees.

**V.**

¶20     For the foregoing reasons, we vacate the decision of the court of appeals.  We reverse the judgment of the superior court and remand to the superior court for proceedings consistent with this opinion.

_____
                  Ruth V. McGregor, Chief Justice

CONCURRING:


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice