FILED BY CLERK

SEP -3 2010

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

DAVID HAMILL,                          )          2 CA-CV 2010-0044
                                       )          DEPARTMENT A
                    Plaintiff/Appellant, )
                                       )          O P I N I O N
            v.                         )
                                       )
MID-CENTURY INSURANCE                  )
COMPANY,                               )
                                       )
                    Defendant/Appellee. )
                                       )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20081311

Honorable Carmine Cornelio, Judge

AFFIRMED

Risner & Graham
  By Kenneth K. Graham                                          Tucson
                                        Attorneys for Plaintiff/Appellant

Udall Law Firm, LLP
  By D. Burr Udall                                             Tucson
                                        Attorneys for Defendant/Appellee

H O W A R D, Chief Judge.

¶1        Appellant David Hamill appeals from the trial court's summary judgment in favor of appellee Mid-Century Insurance Company (hereinafter Mid-Century). He claims the court erred in determining he was not entitled to recover under the underinsured motorist provision (UIM) of his automobile liability policy with Mid-Century. Because the court correctly determined that Hamill's UIM provision does not afford coverage, we affirm.

**Factual and Procedural Background**

¶2        We view the facts in the light most favorable to the party against whom summary judgment was entered. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990). The parties have stipulated to the relevant facts here. A vehicle driven by Susan Smith struck Hamill as he walked in a shopping center parking lot. Hamill sued Smith for the injuries he sustained in the accident. Smith was insured by State Farm Insurance Company against liability for bodily injury for $100,000 for a single person injury. But after the accident and before the personal injury trial, State Farm told Smith it would "pay the amount of any judgment or settlement" rendered against Smith in Hamill's lawsuit. A jury eventually awarded Hamill $165,000 in damages. Mid-Century was unaware of the action against Smith until after the jury verdict.

¶3        Hamill submitted a UIM claim to Mid-Century to recover the amount by which his judgment exceeded the $100,000 liability limits of Smith's State Farm policy. In the meantime, Smith appealed the jury's damage award and eventually settled with

Hamill for $152,000—which State Farm later paid.  Hamill and Mid-Century then agreed to arbitrate liability and damages under Hamill's UIM policy.  They further agreed that they would offset any arbitration award by $134,259.59 and that Hamill retained his right to file a declaratory judgment action seeking to have Mid-Century bound by the jury verdict.  The arbitrator determined that Hamill had sustained $140,000 in damages and that he had been ten percent at fault, effectively reducing the damages owed to $126,000.

¶4        Because the arbitrator found Hamill's damages to be less than the amount Smith's insurance company had paid Hamill, and less than the $134,259.59 Hamill and Mid-Century had stipulated would be the offset amount, Mid-Century determined Smith had not been underinsured and refused to pay Hamill under the UIM provision of his policy.  Hamill sued Mid-Century for breach of contract.  The trial court granted summary judgment in favor of Mid-Century.  Hamill appeals from this judgment.

**Discussion**

¶5        A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c)(1); *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.  "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998) (italics removed). Here, the parties have stipulated to a majority of the facts, and they agree that the

3

threshold legal issue—whether Smith actually was underinsured—is a question of first impression.

¶6     Hamill first asserts the trial court erred by granting summary judgment in favor of Mid-Century because Smith's bodily injury insurance limits were only $100,000 at the time of the accident, while the jury verdict in the personal injury action against her was for $165,000. Relying on the phrase "applicable at the time of the accident" in A.R.S. § 20-259.01(G), he claims Smith therefore was underinsured at the time of the accident. And at oral argument, Hamill's counsel stated that he was seeking $30,740.41, the difference between the $134,259.59 agreed-upon offset amount and the $165,000 jury award.

¶7     Section 20-259.01(B) requires insurers providing automobile liability insurance to offer coverage for underinsured motorists. The statute defines "[u]nderinsured motorist coverage" as "coverage for a person [when] the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages." A.R.S. § 20-259.01(G). The policy behind the statute is that injured parties are entitled to full compensation for their injuries, despite the fact that many drivers are not insured adequately. *State Farm Mut. Ins. Co. v. Arrington*, 192 Ariz. 255, ¶ 20, 963 P.2d 334, 338-39 (App. 1998); *see also Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327, 788 P.2d 56, 60 (1989). The UIM insurer steps into the shoes of the underinsured driver to provide that recovery. *Arrington*, 192 Ariz. 255, ¶ 17, 963 P.2d at 338.

However, injured parties are not permitted to utilize UIM policies to recover more than their actual, legal damages. *Id.* ¶ 20.

**¶8** When the legislature's intent in enacting a statute is not stated clearly, we interpret the statute in a manner that will carry out the legislature's goals in enacting it. *Ariz. Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997). Underlying the UIM statute is a policy of full but single recovery. *See Arrington*, 192 Ariz. 255, ¶ 20, 963 P.2d at 338-39. In that context, the statutory language "applicable at the time of the accident" dictates that we focus our inquiry on the applicable insurance policy rather than setting a single, fixed point in time in determining policy limits. Before both the jury verdict and Hamill's UIM demand to Mid-Century, State Farm had stated it would pay the total judgment or settlement amount against Smith, whatever it might be, thereby effectively eliminating the $100,000 limit of her insurance policy. Because the limit of liability under Smith's policy was not less than the total damages, Smith was not underinsured. *See* A.R.S. § 20-259.01(G).

**¶9** Hamill argues, however, that State Farm's removal of the liability limit does not change his right to recover underinsured motorist benefits under his policy, claiming the policy could provide broader coverage than the statute requires. He focuses on the policy language defining an underinsured vehicle as one that is "insured . . . for bodily injury liability at the time of the accident; and . . . its limit for bodily injury liability is less than the amount of the insured person's damages." He claims, therefore, that for purposes of the UIM provision of his policy, whether he is entitled to coverage

5

depends on the limits of Smith's policy at the time of the accident and that State Farm's offer to pay the full award is not relevant.

¶10    We must read the Mid-Century policy as a whole, in order to give a "'reasonable and harmonious meaning and effect to all its provisions.'" *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, ¶ 12, 144 P.3d 519, 525 (App. 2006), *quoting Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 536, 647 P.2d 1127, 1134 (1982). If one of the policy's provisions is subject to different interpretations, we examine the language, the purpose of the transaction, and public policy considerations. *Id.*

¶11    In addition to the language we quoted above, and on which Hamill relies, the UIM provision of his policy states that Mid-Century "will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an UNDERinsured motor vehicle because of bodily injury sustained by the insured person." The policy provides that the UIM coverage is limited by the specified policy limits and "[t]he amount of damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury." And, the policy states, Mid-Century "will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

¶12    Reading the Mid-Century policy as a whole, its meaning is clear. Like the statute, the language on which Hamill relies focuses on the applicable policies; it does not define a specific time for determining coverage limits. And the liability limits of Smith's

policy were never exhausted. At the time of Hamill's UIM demand, Smith was fully insured, rendering the Mid-Century policy's UIM coverage inapplicable. Further, Hamill admitted at oral argument that there was nothing in the record suggesting that the lower settlement amount was related to Smith's original policy limit. Consequently, Hamill's assertion that he is entitled to any amount in excess of State Farm's bodily injury $100,000 policy limit fails.

¶13          Relying on *Cundiff v. State Farm Mutual Automobile Insurance Co.*, 217 Ariz. 358, 174 P.3d 270 (2008), which he contends allows "double recovery," Hamill argues he nonetheless is entitled to recover the difference between the offset amount and the jury verdict under the UIM provision of his policy. But the court in *Cundiff* determined that workers' compensation benefits are not considered "liability insurance" that can be offset under the UIM statute. *See id.* ¶¶ 10-11. Here, Smith's insurance was liability insurance, which can be offset to determine whether Smith was underinsured under the statute. Therefore, *Cundiff* is inapposite to our analysis, and double recovery is still prohibited.

¶14          Hamill further contends that *Mencel v. Farmers Insurance Company of Washington*, 937 P.2d 627 (Wash. Ct. App. 1997), should dictate the outcome of this case. In *Mencel*, the at-fault driver had liability insurance of $500,000, the jury awarded $804,450, and the driver's insurer subsequently settled for $725,000. *Id.* at 628. The court then held that the jury verdict, rather than the later settlement, determined the

7

amount of full compensation and that the injured party's UIM coverage should pay the difference of the two, to the extent of the UIM policy limits. *Id.* at 629.

¶15 The driver in *Mencel* actually was underinsured. But here, because State Farm had removed the liability policy limit, Smith was not underinsured. Accordingly, policy limits could not have played a role in Hamill's decision to settle. So the issue of whether the settlement amount or the jury verdict defines the damages is irrelevant.[1]

¶16 Additionally, Hamill contends that Mid-Century should be "estopped from arguing that [he] has been fully compensated by the settlement after telling [his] counsel that [he] could settle with State Farm and Mid-Century would still be liable for the difference between the settlement amount and his proven damages." The portions of the record Hamill cites as support in fact only state that Mid-Century would be entitled to offset the amount he received from State Farm against any damages awarded through arbitration, which is exactly what happened here. The statements were not a promise to pay the difference between the settlement amount and the jury verdict, as Hamill suggests.

¶17 Analogizing to *Nationwide Mutual Insurance Co. v. Stevens*, 166 Ariz. 372, 802 P.2d 1071 (App. 1990), *overruled on other grounds by Deese v. State Farm Mutual Automobile Insurance Co.*, 172 Ariz. 504, 838 P.2d 1265 (1992), Hamill also contends that Mid-Century was not entitled to "the benefit of . . . Smith's and State Farm's

---

[1]Furthermore, *Mencel* is not Arizona law and is not, therefore, controlling authority.

8

settlement with [him]." In *Stevens*, there were multiple defendants, which included an uninsured driver and an insured mother who was sued for negligent supervision. *Id.* at 374, 802 P.2d at 1073. The mother's liability insurance carrier settled for her policy limits in exchange for a release of all claims against both the driver and the mother. *Id.* In determining whether the injured party could recover damages under the uninsured motorist provision of his automobile liability policy, the court focused, in part, on whether the driver had a liability policy applicable at the time of the accident. *Id.* Because the court found there was no applicable policy, the driver was determined to be uninsured, and the injured party was entitled to uninsured motorist coverage under his policy. *Id.*

¶18 The court in *Stevens* examined the policy applicable at the time of the accident, as we have here; thus, the case does not support Hamill's contention.[2] *See id.* Additionally, Mid-Century stepped into Smith's shoes by providing underinsured motorist protection. *See Arrington*, 192 Ariz. 255, ¶ 17, 963 P.2d at 338. Once Smith's liability was extinguished through liability insurance, so was Mid-Century's.

¶19 Hamill finally appears to claim that the jury verdict is still in force because no "Satisfaction of Judgment has been filed," despite the fact that he settled for a lesser

---

[2]Moreover, we note that the statutes pertaining to uninsured and underinsured motorists are "separate and distinct," A.R.S. § 20-259.01(H), and can be subject to different statutory interpretation, *Cundiff*, 217 Ariz. 358, ¶¶ 13-14, 174 P.3d at 273-74.

amount.[3] But whether such a document has been filed has no bearing on the central issue in this case—the determination of whether Smith was underinsured.

**Conclusion**

¶20      In light of the foregoing, we affirm the trial court's grant of summary judgment in favor of Mid-Century. We decline both parties' requests for attorney fees.

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

---

[3]Because we conclude Smith was not underinsured, we need not address Hamill's remaining arguments.

10