IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE FARM AUTOMOBILE INSURANCE COMPANY,
*Plaintiff/Appellee,*

*v.*

JACEY LEE ORLANDO, *Defendant/Appellant.*

No. 1 CA-CV 22-0447
FILED 8-15-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-006088
The Honorable Katherine M. Cooper, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Hill Hall & DeCiancio PLC, Phoenix
By David W. Bell
*Counsel for Plaintiff/Appellee*

Mick Levin PLC, Phoenix
By Mick Levin
*Counsel for Defendant/Appellant*

---

### OPINION

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge Daniel J. Kiley joined.

---

**M O R S E**, Judge:

¶1 Jacey Lee Orlando challenges the superior court's grant of summary judgment to State Farm Automobile Insurance Company ("State Farm") on her breach of contract and insurance bad faith counterclaims. We reject State Farm's argument that cases interpreting Arizona's uninsured motorist ("UM") statute compel the superior court's grant of summary judgment on Orlando's underinsured motorist ("UIM") claim. Because Arizona's UIM statute does not allow the off-highway vehicle exclusion allowed under the UM statute, we vacate and remand for further proceedings on Orlando's breach of contract claim. But because Orlando has failed to show any genuine issue of material fact as to bad faith, we affirm summary judgment on that claim.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Orlando, a passenger on an all-terrain vehicle ("ATV"), was injured during a February 2018 rollover accident in California's Imperial Sand Dunes. After receiving policy limits from the driver's insurer, Orlando made an UIM claim on her State Farm automobile insurance policy ("Policy").

¶3 On June 10, 2019, counsel for State Farm wrote Orlando's counsel stating that "it does not appear that [the Policy] provides [UIM] coverage" because the ATV was not an "underinsured motor vehicle" under the Policy:

> ***Underinsured Motor Vehicle*** does not include a land motor vehicle:
>
> 2. designed for use primarily off public roads except while on public roads[.]
>
> …

> *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*.
>
> The bodily injury must be:
>
> 1. sustained by an *insured*; and
>
> 2. caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

State Farm's counsel cited two cases addressing UM coverage—*Chase v. State Farm Mutual Automobile Insurance Co.*, 131 Ariz. 461 (App. 1982), and *West American Insurance Co. v. Pirro*, 167 Ariz. 437 (App. 1990)—to maintain that, when read together, Arizona's Financial Responsibility Act ("FRA"), A.R.S. §§ 28-4001 to -4153, and Uninsured/Underinsured Motorist Act ("UMA"), A.R.S. § 20-259.01, "do not compel coverage for vehicles that are not intended to be operated on the highways." Stating that it appeared "Arizona courts have already decided this issue in the context of [UM] coverage," State Farm's counsel invited Orlando to provide contrary "information or analysis" if she disagreed with State Farm's conclusion.

¶4 Orlando did not respond. State Farm's counsel followed up in writing four months later, again inviting a response. Seven months after that, State Farm sued seeking a declaratory judgment that the Policy did not provide UIM coverage for the ATV accident. Orlando counterclaimed, alleging breach of the Policy and for bad faith.

¶5 State Farm moved for summary judgment, contending the Policy did not provide UIM coverage because the ATV was not an "underinsured motor vehicle." State Farm also contended Orlando had presented no evidence to support a bad faith claim. Orlando opposed the motion, arguing, as relevant to this appeal, that the Policy definition could not limit UIM coverage because "exceptions to [UIM] coverage not permitted by the [UMA] are void." Orlando also offered a declaration from her expert witness, Frederick Berry, who she contended had detailed "over twenty different explanations from which a reasonable jury could find sufficient evidence to find that State Farm has acted in bad faith."

¶6 The superior court granted State Farm's motion. The court concluded the ATV was not an "underinsured motor vehicle" under the Policy because it was "designed for use primarily off public roads" and the accident did not occur on a public road. The court further concluded the

UMA did not bar the definition's limitation on UIM coverage because it was "nearly identical to [definitions] approved of in *Pirro* and *Chase*." It further concluded that Orlando had presented "no evidence that State Farm acted unreasonably in the handling of Orlando's claim or knew that it was acting unreasonably or with reckless disregard that such knowledge could be imputed to it." The court also awarded State Farm attorney fees and costs.

**¶7**        Orlando moved for a new trial, contending *Pirro* and *Chase* did not apply because they addressed UM, not UIM, coverage. She also again cited the Berry declaration to argue fact questions remained as to whether State Farm processed her claim in bad faith. The court denied Orlando's motion. Orlando timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(5)(a).

## DISCUSSION

**¶8**        Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo and view the evidence and reasonable inferences in a light most favorable to Orlando as the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022).

**¶9**        The interpretation of an insurance contract is a question of law we review de novo. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, ¶ 8 (2008). "[T]he insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 13 (App. 2000).

## I.        Breach of Contract Claim.

**¶10**        Two statutory subsections of the UMA govern "uninsured motorist coverage," and "underinsured motorist coverage." *See* A.R.S. § 20-259.01(E), (G). While similar, the subsections are not identical.

| Uninsured Motorist Coverage | Underinsured Motorist Coverage |
|---|---|
| "Uninsured motorist coverage", *subject to the terms and conditions of that coverage*, means coverage for damages due to bodily injury or death if the *motor vehicle* that caused the bodily injury or death is not insured by a motor vehicle liability policy that contains at least the limits prescribed in § 28-4009. For the purposes of uninsured motorist coverage, an uninsured motorist does not include a person who is insured under a motor vehicle liability policy that complies with § 28-4009.<br><br>A.R.S. § 20-259.01(E) (emphasis added). | "Underinsured motorist coverage" includes coverage for a *person* if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.<br><br>A.R.S. § 20-259.01(G) (emphasis added). |

The legislature provided for notable differences in these two statutory subsections. For example, UM coverage may be "subject to the terms and conditions" of the policy but the UIM subsection allows for no similar limitation. *Id.* And UM coverage provides for damages "caused" by a "motor vehicle" but UIM provides coverage for damages "resulting from [an] accident," without reference to a motor vehicle. *Id.*; *see* A.R.S. § 20-259.01(D) (defining "uninsured motor vehicles"). The UMA requires every insurer who writes motor vehicle liability policies to offer UIM coverage. A.R.S. § 20-259.01(B); *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327 (1989). "[T]he legislature intended a broad application of UIM coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the available limits of liability." *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 315, ¶ 15 (2000). "[E]xceptions to [UIM] coverage not permitted by the statute are void." *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 360, ¶ 9 (2008) (quoting *Taylor*, 198 Ariz. at 315, ¶ 13).

¶11        State Farm relies on *Chase* and *Pirro* to support its "underinsured motor vehicle" Policy definition. In *Chase*, the plaintiff was struck by a golf cart that crashed into a model home garage. 131 Ariz. at 462. The plaintiff sought UM benefits, but his insurer denied coverage based on an "uninsured motor vehicle" policy definition similar to the definition at issue here:

> [T]he term uninsured motor vehicle shall not include:
>
> . . . .
>
> (A) land motor vehicle designed for use principally off public roads except while being used on public roads . . . .

*Id.* The plaintiff argued the FRA obligated "owners or operators to purchase insurance covering liability incurred both on and off the public highway." *Id*. at 464. While we held that the FRA and UMA should be read together, we concluded the FRA was "silent as to any requirement that insurance policies obtained to provide proof of financial responsibility also cover off-road accidents." *Id*. at 465.

¶12        Because the UMA did not define "uninsured motor vehicle" at that time, we looked to the definition section of Arizona's transportation statutes, which defined "vehicle," in relevant part, as a "device in, upon or by which any person or property is or may be transported upon a public highway" and "motor vehicle" as a "self-propelled vehicle" with exceptions not relevant to this case. *Id*. (quoting A.R.S. § 28-101). We cited several out-of-state cases supporting the conclusion that a vehicle designed for off-road use was not a "motor vehicle" unless it was used on a public road:

> [W]e must conclude that the term is intended to include motor vehicles which should be insured under the Act but are not, and motor vehicles which, though not subject to compulsory insurance under the Act, are at some time operated on the public highways. Only in these instances is the uninsured motorists provision serving its intended purpose of complementing the original Act and furthering the financial protection accorded thereby to persons injured by motor vehicles on the public highways. This purpose would not be served by interpreting the uninsured motorists provision so as to cover accidents involving motor vehicles not subject to compulsory insurance and which occur on private property.

6

*Id.* at 468 (quoting *Autry v. Aetna Life & Cas. Ins. Co.*, 242 S.E.2d 172, 175 (N.C. Ct. App. 1978)).[1]

¶13      *Pirro* involved a similar "uninsured motor vehicle" definition that excluded from UM coverage vehicles "[d]esigned mainly for use off public roads while not on public roads." 167 Ariz. at 438. We cited the FRA's requirement at that time which required "[e]very motor vehicle *operated on any highway* in this state . . . be covered by" some form of liability insurance. *Id.* (citing then-A.R.S. § 28-1521(A)). From there, we reasoned that because "liability insurance need only cover motor vehicles *operated on highways* and," because UM coverage "is intended to provide the reciprocal or mutual equivalent of automobile liability coverage under the [FRA] and automobiles that are not intended to be operated on the highways need not be covered by liability insurance, . . . excluding such vehicles from [UM] coverage does not violate" public policy. *Id.* As the dune buggy at issue in *Pirro* was designed for off-road use and was not on a highway when the accident occurred, we held the insurer was not obligated to provide UM coverage. *Id.* at 438-39.

¶14      The UMA now defines "uninsured motor vehicle" to include, "subject to the terms and conditions of that coverage, . . . any insured motor vehicle if the liability insurer of the vehicle is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency." A.R.S. § 20-259.01(D). And the FRA now defines "motor vehicle" to mean "a self-propelled vehicle that is registered or required to be registered under the laws of this state," but only motor vehicles "operated on a highway in this state" are subject to its requirements. A.R.S. §§ 28-4001(3), -4135(A).

¶15      The parties agree (1) the ATV at issue was registered in Arizona as an off-highway vehicle, and (2) the accident occurred in the Imperial Sand Dunes in California. If this case involved UM coverage, then the reasoning of *Chase* and *Pirro*—that insurers need not provide UM coverage for accidents involving vehicles not subject to the FRA's requirements—would apply.

¶16      Orlando points out, however, that UM and UIM coverages "are separate and distinct and apply to different accident situations." A.R.S. § 20-259.01(H). Orlando relies on *Cundiff*, where our supreme court held

---

[1]     The current FRA exempts golf carts "used in the operation of a golf course or only incidentally operated or moved on a highway." A.R.S. § 28-4132(8).

that workers' compensation benefits could not be offset against available UIM benefits. 217 Ariz. at 361, ¶ 12. The court distinguished a prior UM case that allowed a similar offset if the insured was fully compensated because "[t]he statutory provision defining UM coverage expressly provides that such coverage is 'subject to the terms and conditions of that coverage,' while the [statutory] provision defining UIM coverage does not provide a similar limitation." *Id.* at 361-62, ¶ 14 (citations omitted) (quoting A.R.S. § 20-259.01(E)); *cf. Terry v. Auto-Owners Ins. Co.*, 184 Ariz. 246, 249-50 (App. 1995) (allowing for a workers' compensation offset provision in an UM policy as long as it did not prevent full recovery of damages).

¶17 The definition at issue in this case is a "term and condition" of the Policy. State Farm nonetheless contends "the same public policy considerations apply to underinsured motorist coverage as to uninsured motorist coverage," citing *Higgins v. Fireman's Fund Insurance Co.*, 160 Ariz. 20, 22 (1989). We reject this argument for two reasons. First, we look to public policy when interpreting a statute only if the statutory language is unclear. *See Liebsohn v. Hobbs*, 254 Ariz. 1, 4, ¶ 10 (2022) (noting courts only consider a statute's "subject matter and purpose" if its language "has more than one reasonable meaning"). The UM statutory subsection provides that coverage may be "subject to the terms and conditions of that coverage." A.R.S. § 20-259.01(E). The UIM statutory subsection does not. A.R.S. § 20-259.01(G). When the legislature includes language allowing conditions for one type of coverage and does not include such language for another type of coverage, "it does so with the intent of ascribing different meanings and consequences to that language." *Workers for Responsible Dev. v. City of Tempe*, 254 Ariz. 505, 511, ¶ 21 (App. 2023) (quoting *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249-50, ¶ 8 (App. 2006)). State Farm does not identify the ambiguity created by the different statutory texts.

¶18 Second, the public policy stated in *Higgins*—that "innocent members of the public who have purchased underinsured motorist coverage are entitled to coverage as if the offending driver was insured in the amount of the underinsured policy limit"—does not aid State Farm in this case. 160 Ariz. at 23. We also stated in *Higgins* that the UMA "does not permit the insurer to void the coverage by . . . exceptions not permitted in the statute." *Id.*; *see State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 3 (1989). The only express limit on UIM coverage in the UMA—the anti-stacking provision of A.R.S. § 20-259.01(H)—does not apply. *Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 491, ¶ 12 (2012); *see Franklin v. CSAA Gen. Ins. Co.*, --- Ariz. ---, ---, ¶¶ 9-24 (July 28, 2023) (interpreting the anti-stacking provision for UIM coverage). And State Farm does not contend

Orlando received full compensation from the driver's liability insurance. *See* A.R.S. § 20-259.01(G) (noting UIM coverage applies "[t]o the extent that the total damages exceed the total applicable liability limits").

**¶19**		State Farm also cites several cases that permitted UIM insurers to define who is a named insured, contending that "public policy does not restrict the parties' right to agree on who is an insured." *Beaver v. Am. Fam. Mut. Ins. Co.*, 234 Ariz. 584, 586, ¶ 8 (App. 2014) (cleaned up) (quoting *Am. States Ins. Co. v. C & G Contracting, Inc.*, 186 Ariz. 421, 426 (App. 1996)). This is consistent with the text of the UMA, which provides that UIM coverage "extends to and covers all persons insured under the policy." A.R.S. § 20-259.01(B). State Farm cites no UMA language that allows insurers to limit UIM coverage based on the vehicle or vehicles involved in an accident. *Cf. Taylor*, 198 Ariz. at 316, ¶ 16 ("First party UIM insurance follows and protects the person, not the vehicle.").

**¶20**		For these reasons, we hold that the Policy's "underinsured motor vehicle" definition cannot limit or bar UIM coverage based on the type of vehicle involved. *See Sharp*, 229 Ariz. at 492, ¶ 16 ("Subsection (G) requires an insurer to provide UIM coverage, '[t]o the extent that the total damages exceed the total applicable liability limits.' Any policy provision to the contrary is void and unenforceable."). We therefore vacate the grant of summary judgment on Orlando's breach of contract claim and remand for further proceedings on that claim.

## II.	Bad Faith Claim.

**¶21**		Orlando also challenges the grant of summary judgment on her bad faith claim. An insurer owes a duty to act in good faith for its insured's benefit, and a breach of that duty may result in a claim for the tort of bad faith. *Sobieski v. Am. Standard Ins. Co. of Wis.*, 240 Ariz. 531, 534, ¶ 10 (App. 2016). But "an insurer's reasonable but incorrect policy interpretation does not, by itself, constitute bad faith." *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 215, ¶ 94 (App. 2010). To defeat State Farm's motion for summary judgment, Orlando had to present "sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, ¶ 22 (2000).

**¶22**		Orlando relies on Berry's declaration to contend genuine issues of material fact remain as to whether State Farm acted in bad faith.

Orlando's controverting statement of facts contained two paragraphs discussing Berry's declaration. The first paragraph stated the following:

> Berry concluded that "State Farm has misused its power of money, time, superior knowledge and litigation tolerance as it provided sub-standard claim service to [Orlando]. In its claim evaluation and later in its claim investigation, State Farm was not prompt and thorough and did not give equal consideration to the interests of [Orlando] as it gave its own interests."

The cited page from Berry's declaration repeats this same language. Such conclusory statements, however, are insufficient to withstand summary judgment. *See Nolde v. Frankie*, 192 Ariz. 276, 282, ¶ 28 (App. 1998) (stating affidavits that "provide mere conclusory statements" are insufficient to defeat a motion for summary judgment); *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) ("[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment.").

¶23 The second paragraph stated that Berry had "outlined over twenty deficiencies in State Farm's handling of . . . Orlando's claim." But neither that paragraph nor Berry's declaration sets forth specific facts to support any of the alleged deficiencies. *See* Ariz. R. Civ. P. 56(e) (requiring affidavits offered in opposition to summary judgment to "set forth specific facts showing a genuine issue for trial"). For example, Berry stated that he "believe[d] . . . State Farm made an early evaluation of the UIM claim before much claim investigation." He also stated his "belief" that State Farm had set no reserve for Orlando's UIM and bad faith claims. He cited no record evidence to support either of these "beliefs." *See Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999) ("Sheer speculation is insufficient to . . . defeat summary judgment.").

¶24 Berry also opined that, "[i]n [his] experience, insurers purposefully locate matters . . . to be particularly harmful to the insurer or helpful to its client/insured[] outside of the claim file because their contents hardly ever support nonpayment of an insurance claim." He identified no such "matters" in this case and cited no evidence to suggest State Farm "purposefully" removed anything from its claim file. *See Sobieski*, 240 Ariz. at 542, ¶ 45 (rejecting expert opinion that insurer's business policies "'could' or 'might' result in pressure on the claims department because he had seen that happen in other insurance companies").

¶25 Berry also speculated that State Farm retained a "law-trained" person who "may have been acting as State Farm's adjuster and potential trial witness," but identified no such person. He then speculated this unidentified person "may have been tasked to develop information that is useful to State Farm as it looked for ways to 'deny' the claim and defend any ensuing fist-party [sic] 'bad faith' claim litigation." But, again, Berry cites no evidence to suggest any such thing occurred. Berry also generally opined that insurers should not retain "independent adjusters, attorneys, experts or consultants that are biased," but did not point to any evidence of bias in this case. *See Aida Renta Tr. v. Maricopa County*, 221 Ariz. 603, 611, ¶ 19 (App. 2009) ("We will not allow an expert to base a conclusory opinion on no facts.").

¶26 Berry opined that State Farm did not act promptly because it did not correspond until three months after Orlando's counsel sent the March 5, 2019 "demand letter." That letter was not, however, a demand letter. On the contrary, the letter merely put State Farm on "notice of [the] collision in the event that there *should later arise a claim under your policy*, including . . . underinsured motorist . . . claims." (Emphasis added.) Indeed, the letter expressly stated that Orlando was "NOT opening a UM/UIM claim at this time" and that her counsel would "provide [State Farm] with appropriate notice if and when we determine that either UM/UIM may be applicable to this collision." There is nothing in the record showing when, or even if, Orlando later gave such notice. Because the March 5, 2019 letter sent by Orlando's counsel was not a demand letter, the letter triggered no obligation on State Farm's part to respond, promptly or otherwise. Notably, Berry cited this same three-month period as the only support for his opinion that State Farm "never intended to pay [the] UIM claim" and would litigate this case all the way to the Arizona Supreme Court.

¶27 Berry also opined that State Farm "did not make any serious efforts to resolve [Orlando's] claim of insurer bad faith claim handling." Berry, however, cited no evidence to show Orlando disclosed her intent to pursue a bad faith claim before filing her counterclaims in this litigation. He also cited no authority to support his opinion that State Farm's duty to "conduct a prompt, thorough and fair claim investigation and . . . evaluation continues . . . even into claim litigation." He also cited no industry standards governing how an insurer should investigate and evaluate a bad faith claim already in litigation.

¶28 In summary, Berry's declaration offered conclusory allegations, but no specific evidence, to support a finding that State Farm

acted in bad faith. Accordingly, Berry's declaration did not defeat State Farm's summary judgment motion. *See Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 520, ¶ 19 (App. 2009) (concluding an expert affidavit that "contain[ed] only speculation and no specific facts demonstrating a material factual dispute" could not defeat summary judgment).

**¶29** Orlando also argues that State Farm has violated its obligation to promptly investigate and determine her claim because State Farm has yet "to actually accept or deny [her] claim." Orlando observes that neither of State Farm's letters "actually denied [her] claim," and State Farm "chose not to make a determination as to whether there was coverage" when it filed this action seeking a judicial determination of the issue. By failing to ever "mak[e] a coverage decision," she concludes, State Farm violated its duty "to make a prompt determination of her claim."

**¶30** But during the proceedings before the superior court, Orlando based her bad faith claim on her contention that State Farm had wrongfully denied her benefits, not, as she now contends, that State Farm never made a decision. Her counterclaims for breach of contract and bad faith were based on State Farm's alleged "*de facto* denial of benefits." And, in her opposition to State Farm's motion for summary judgment, she cited Berry's declaration to support her position that "a reasonable jury could determine that State Farm acted in bad faith in denying [her] claim." Not until she filed her motion for new trial did Orlando assert that State Farm had not processed and resolved her claim. Based on her positions before the superior court, Orlando waived the argument that State Farm committed bad faith by failing to decide whether to deny her claim. *See Kent v. Carter-Kent*, 235 Ariz. 309, 313, ¶ 20 (App. 2014) (finding argument waived when raised for first time in new trial motion); *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 593-94, ¶ 25 (App. 2021) ("[L]egal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits." (quoting *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011))).

**¶31** We therefore affirm summary judgment on Orlando's bad faith claim.

## III. Attorney Fees.

**¶32** State Farm requests reasonable attorney fees incurred in this appeal under A.R.S. § 12-341.01(A). While this case arises out of the Policy,

in our discretion and because neither party is completely successful on appeal, we deny State Farm's request, without prejudice to the superior court awarding such fees at the conclusion of this case. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 544 (1982) ("[A]n action alleging insurer's bad faith is one 'arising out of a contract' within the meaning of [§] 12-341.01(A)."); *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 221, ¶¶ 13-14 (App. 2012) (holding that an UIM coverage dispute arises out of contract for purposes of A.R.S. § 12-341.01(A)).

## CONCLUSION

**¶33** We affirm summary judgment on Orlando's bad faith claim, vacate summary judgment on her breach of contract claim, and remand for further proceedings. We also vacate the superior court's attorney fees and cost awards because it is not clear at this time who will ultimately be the successful party. The superior court may consider attorney fees and taxable cost applications as appropriate at the conclusion of the proceedings on remand. Orlando is the successful party on balance in this appeal and may recover taxable costs incurred in this court upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA